### ARGUED AND DETERMINED

###### IN THE

# SUPREME JUDICIAL COURT

###### OF

# MASSACHUSETTS.

---

### JAMES H. BEALS *vs.* INHABITANTS OF BROOKLINE.

Norfolk.   March 15, 16, 1899. — June 30, 1899.

Present: HOLMES, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Betterment — Evidence — Matter within Discretion of Judge —*
*Instructions — Trial.*

At the trial of a petition for the revision of an assessment levied under statutory authority upon land for benefits arising from improvements in the channel of a brook, for which purpose a part of the land was taken, in the first part of the trial the judge refused to let the petitioner put in a certified copy of the taking, but at the close of the evidence, the respondent consenting, the judge said to the petitioner that he might read to the jury all of the taking except the part relating to the award of damages, but that such award could not be put before the jury. The petitioner declined to avail himself of this permission, and excepted to the exclusion of the record. *Held,* that the petitioner had no ground of exception.

At the trial of a petition by B. for the revision of an assessment levied upon his land for benefits arising from improvements in the channel of a brook, a civil engineer, called as a witness by the petitioner, was asked the following question: "Are you prepared to tell the jury what the cost of constructing a channel following the original line of this watercourse across B.'s land would be? State the different kinds of channels which could reasonably carry off the water of the brook, and describe each, and state what it would cost." Another witness, who had had practical experience in draining lands, was asked, "Won't you state what, in your judgment, would be a proper size for a drain to drain B.'s property?" *Held,* that the questions were properly excluded.

At the trial of a petition for the revision of a betterment assessment under St. 1887, c. 99, upon land, some of which was taken for the improvement assessed for, the petitioner contended that, after the taking, he was obliged to lay out his lots in certain sizes, and offered to show that such lots would not sell so well and were not so valuable as lots of different dimensions. *Held,* that the evidence was rightly excluded.

It is within the discretion of the judge, at the trial of a petition for the revision of a betterment assessment on land, to admit in evidence photographs of the land taken before any of the work for which the assessment was made had been done.

At the trial of a petition for the revision of a betterment assessment on land, no exception lies to the admission in evidence of the record of the assessment including the amount, and to the instruction to the jury that the adjudication as to the amount was to stand unless the petitioner proved by a fair preponderance of the evidence that it was not right.

The fact that land is rendered more healthy for occupation by an improvement made by the town may be considered in assessing a betterment upon the land under St. 1887, c. 99, although there is a similar benefit to other real estate in the neighborhood.

Where, on a petition for the revision of a betterment assessment on land, the jury have been instructed that the benefit must result solely from the work done under the statute, the petitioner is not entitled to rulings embracing a particular enumeration of possible future contingencies, the respondent making no contention that any of these could properly be considered by the jury as an item of benefit.

Where much of the land upon which a betterment assessment has been levied was low and swampy, and by reason of the work done under the statute the surface water, from whatever source it comes, is more speedily or more effectually taken from the land, and that is a benefit, the jury may consider it upon a petition to revise the assessment.

It is within the discretion of the judge presiding at a trial to single out any individual fact and rule upon the effect of it alone.

It cannot be ruled, as matter of law, that the removal of a pool of water by an improvement made by a town would not of itself be a benefit to land near the water, but not abutting on it.

Upon a petition for the revision of a betterment assessment under St. 1887, c. 99, on land, some of which was taken, the petitioner is not entitled to have the jury instructed that " if, as claimed by the petitioner, the land as taken by the town leaves the remainder of the petitioner's estate in such situation that, according to a reasonable and proper plan of development, certain lands would be too deep and certain lands too shallow to sell to advantage, the jury should consider these circumstances in determining whether the petitioner's estate has received a benefit as claimed by the town."

Upon a petition for the revision of a betterment assessment on land, the jury are rightly instructed that they cannot reduce the assessment unless satisfied by a fair preponderance of the evidence that it is not right, and that on this question the assessment is " not evidence either *prima facie* or in any other way."

The fact that a new channel of a brook laid out by a town is covered will not prevent the use of it by a landowner for the purpose of carrying off the surface water by entering a private drain connected with the main channel, and it is to be assumed that such connection will be allowed under proper restrictions and regulations, and at the trial of a petition for the revision of a betterment assess-

ment on land for such laying out of the channel, there being evidence that the estate was benefited by the improvements, the petitioner is not entitled to a ruling that "upon the evidence no betterment can be properly assessed under the" statute authorizing the work.

Upon a petition for the revision of a betterment assessment on land by the selectmen of a town under St. 1887, c. 99, the whole proceeding being upon the assumption that the acts of the selectmen were within the statute and valid, the petitioner is not entitled to a ruling that "the statute only authorizes the change of the channel of a watercourse, therefore, if the town has constructed an independent drain, not intended as a channel for the watercourse and not adapted for that purpose, but designed merely to serve as a drain for the adjoining land, such drain is not within the authority conferred by the statute."

Under all the circumstances of this case, which was a petition for the revision of a betterment assessment on land, levied under St. 1887, c. 99, the petitioner is not entitled to a new trial because of the failure of the judge to give the twelfth ruling requested, relating to catch basins.

PETITION to the Superior Court for a jury to revise a betterment assessment levied by the respondent town upon certain land of the petitioner, under St. 1887, c. 99. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that the estate of the petitioner was situated on Harvard Street in the respondent town, and contained about 567,000 square feet; and that the town, acting under St. 1887, c. 99, took 46,600 square feet of the petitioner's land.

Through the petitioner's land ran a brook known as Smelt Brook. The respondent, acting under the statute, widened the brook, altered its courses and deepened the channel thereof, and covered the same under the provisions of law authorizing the assessment of betterments at an expense of $23,079, and assessed upon the petitioner's estate a betterment of $7,000, being one half of $14,000, the amount adjudicated by the selectmen of the town to be the benefit to the petitioner's estate by such laying out and improvement.

The petitioner offered in evidence a certified copy of the record of the assessment of the betterments made by the selectmen, including the assessment made on the petitioner's estate, and also a certified copy of the taking by the selectmen for the purpose of making the improvements in the brook, of 46,600 square feet of the petitioner's land, consisting of a strip of land forty feet in width through nearly the entire length of the land

of the petitioner and other lands; and the petitioner asked that the amount of the assessment levied on his estate be not disclosed to the jury. The judge denied the petitioner's request, and, stating that a part of the record could not be introduced, admitted the entire copy, showing the amount of the betterment assessed on the petitioner's estate; and the petitioner duly excepted. The judge also, against the petitioner's objection and exception, refused to admit the certified copy of the taking of the land for the purpose of making the channel.

After the evidence was all in, the respondent consenting, the judge said that the petitioner might, if he saw fit, read all of the instrument of taking except the part relating to the award of damages, but that the award of damages could not be put before the jury. The petitioner declined to avail himself of this permission, and renewed his exception to the exclusion of the evidence.

There was evidence tending to prove that the channel as constructed began at a point 225 feet from the southerly line of the petitioner's land where it fronted on Harvard Street, and was three feet and six inches in width by three feet and four and half inches high for the upper portion, and the drain continued on these dimensions to an angle in the property as shown on a plan; that below this point the drain was four feet and three inches in width and four feet and one inch in height; that outside of the land taken there were placed upon the petitioner's land four catch basins, the tops of which were about two feet lower than the top of the channel; and that the catch basins were connected by an open jointed tile drain with the main channel.

It appeared that between the time of the assessment of the betterment and the trial, a way had been in part constructed over the channel, but there was no evidence that the way had been laid out, constructed, or accepted by the town, and no contention was made by the respondent that any betterment should be assessed on account of the way; nor was any contention made by the respondent that the jury should consider in any way the possibility that the town might lay out a way over the location of the covered channel, or the possibility that a way might be continued from Harvard Street to the location

of the covered channel ; nor that the jury should take into consideration such way or any other possible future ways.

There was also evidence tending to show that for the purpose of draining away soil water during the construction of the drain, and the land water after the construction was completed, an under drain eight inches in diameter was constructed about one and one half feet beneath the large drain ; that this under drain was a tile drain laid without any mortar and with open joints packed with gravel, so that all the water which should come to this main drain or tunnel would flow along with the water in the under drain ; that at intervals there were pipe connections called chimneys to lead the water from the under drain up through the bottom of the tunnel or main drain and into the main drain, so as to keep the water in the land during the construction and afterwards as low as possible ; that the drain could be connected with every house along the street and could be availed of by the owners of the land through which it extended for the drainage of the surface water from their land, on their obtaining permission from the town authorities ; that the method of construction was a proper one to accomplish the objects for which the drain was designed ; and that the size of the drain was properly adapted for the estates which were to be drained by it.

There was evidence on the part of the respondent that of the petitioner's land 313,000 feet would be classed as upland, and 183,000 feet as swamp land ; that the drain had to be laid on a pile foundation, and had a lower level than the surrounding land of the petitioner ; and that the proper way to develop and utilize the low land would be to fill it up. It also appeared that the land in question had been sold since the betterment was levied ; that the swamp had been nearly all filled up ; and that the jury saw the land with the filling on it.

One French, the town engineer, who had charge of the work of laying out and constructing the improvement, testified that there were several of these catch basins along the line of the improvement ; that they were laid with dry stone, and were connected with the main drain ; that they would be mainly useful only in draining the land before it was filled up ; and that they were intended for temporary use, as the land existed before the filling was done.

One Carr, called as a witness by the petitioner, he being the engineer who had charge of the filling of this land, testified that he told the men who were doing the filling to pay no attention to the catch basins, but to fill right over them; and that the catch basins would have to be covered up, and they were covered up. On cross-examination he testified that he imagined that the catch basins were merely temporary things to take the water that might come on the surface of those parts where they were constructed, and take it off the land drained, and that was what he should put them in for; that he supposed that it was intended and expected that they would be covered up eventually; and that the operation of the filling would be to destroy the use of the catch basins.

There was evidence that the drainage of the petitioner's estate was accomplished through the tiled drain underneath the main channel, and to some extent by these catch basins by the water running down through the same into the tiled drain, and up the chimneys into the main channel. There was no evidence that the petitioner or his predecessor in title, who owned the land at the time of the laying out of the brook channel, had ever given the town permission to construct the catch basins, and no evidence that the petitioner or his predecessor in title was aware of the construction of them or had ever objected to their construction, and no evidence of what the cost of the catch basins was apart from the rest of the work; but the counsel for the respondent, in his closing argument to the jury, stated that the catch basins were merely temporary things and of no consequence in this case.

It appeared that a portion of the petitioner's land in the rear was low land, and a part thereof was covered by water, the amount of which was in dispute. On the part of the petitioner it was contended that the amount did not exceed half an acre, and there was evidence that stumps of trees were found in the low land, and that at times a part of the water which was thereon was water which had been dammed back by a small dam on the land of one McKay, situated farther down the stream, made by boys for the purpose of raising the water on the petitioner's land so that they might skate on the pond thus formed. There was no evidence that the town had ever

had anything to do with the damming up of the water. There was also evidence that a part of the water on the petitioner's land was surface water, flowing from Corey Hill and elsewhere. The petitioner's land was lower than Harvard Street, and lower than the land leading up to Corey Hill.

On the part of the respondent there was evidence that the amount of the petitioner's low land was between four and five acres, and that substantially the whole of this low area through which Smelt Brook flowed was a swamp. There was evidence that surface water flowed from an area amounting to about 150 acres, including a part of Corey Hill, down through the adjoining street, in and upon land of the petitioner, and increased the amount of water in the rear of the petitioner's land; and that the petitioner's land was the lowest part of the territory of about 150 acres, and its situation with reference to the surrounding land, including Corey Hill, was such that the water which naturally fell upon the surrounding land naturally flowed down upon the petitioner's land by reason of its lower level, and would have flowed thereon from the surrounding land even if there had been no streets constructed on such surrounding land.

The petitioner contended that the channel as constructed was much larger than was necessary to drain his land, and asked one Felton, a civil engineer, who was called as a witness by the petitioner, and who duly qualified as an expert, this question: "Are you prepared to tell the jury what the cost of constructing a channel following the original line of this watercourse across Mr. Beals's land would be, — the reasonable cost of constructing that channel would be? State, if you please, the different kinds of channels which could reasonably carry off the water of Smelt Brook, and describe each, and state what it would cost."

The judge, upon objection by the respondent, excluded the question; and the petitioner excepted.

There was evidence tending to show that Smelt Brook, after it entered the low land of the petitioner's estate, divided into several channels, and after meandering through the petitioner's land, reunited into one channel and flowed through land of one McKay and other land into and through the city of Boston

until it reached Charles River; that the drain which the town constructed to take the waters of the brook began about 225 feet from Harvard Street, extended through the land of the petitioner and land of McKay and other land, and connected with and emptied its waters into a drain of the city of Boston extending to Charles River; and that it was necessary, in order to drain the waters of the brook and to carry the same off of the land of the petitioner and of other parties, to construct the drain not only through the petitioner's land, but also through other estates, and connect it with and discharge it into the drain of the city of Boston, that being the natural outlet for the water of the brook and for the drainage of the lands by reason of the slope and configuration of the surface.

One Bennet, who was called as a witness by the petitioner, and who had had practical experience in draining and laying out large lots of land, was asked this question: "Won't you state what, in your judgment, would be a proper size for a drain to drain Mr. Beals's property?" The question was objected to by the respondent, and the judge excluded it; and the petitioner excepted.

It was contended on the part of the petitioner that, by reason of the location by the selectmen of the channel where it was located in the petitioner's land, the petitioner in developing his property was obliged to lay out the land so that the lots would cut up 50 by 100 feet; and a witness duly qualified as an expert in real estate in Brookline was asked whether lots 50 by 100 feet sell as well, or are considered as valuable, as lots 70 by 70. The question was objected to, and excluded; and the petitioner excepted.

The same witness was also asked whether, under the present location of the channel, it was possible to lay out lots 70 by 70, the petitioner intending to show that it was not possible. The respondent objected to this question. The judge ruled that the evidence was not admissible; and the petitioner excepted.

The respondent offered in evidence certain photographs which were taken on November 6, 1895, after the work had been begun upon the improvement, but before any work had been done which affected the petitioner's land; and called as a witness French, the town engineer, who had taken the photographs,

and who testified that before the photographs were taken, McKay, the proprietor on the brook immediately below the petitioner's land, had constructed a private road, and had carried a bank of filling across the natural channel which was formerly the outlet of this marsh; that the effect of the construction of this road across the channel had been to dam up the water at that time to some extent on the petitioner's land; that the town had nothing to do with that work, or the damming up of the water; and that these photographs were true representations of the territory they purported to represent, as it existed at the time when the photographs were taken.

The jury had taken a view of the premises, and nearly the whole of the low level swamp land had been covered with gravel filling, so that almost none of the original surface of the swamp remained, but the whole character of the land had been changed.

The respondent's counsel, in offering the photographs, said that he did so for the purpose of giving the jury some idea of the character of the land as it existed before the making of the improvement, and expressly disclaimed any intention to argue that the photographs were any indication of the actual normal amount of the water on the land, and admitted that the amount of the water as shown on the photographs had been increased, owing to the damming up of the water by the construction of the private road. It was admitted that the water at the time the photographs were taken by reason of the dam had been dammed up so as to extend over a considerable part of the petitioner's land to a depth of about two feet. Testimony had been given by witnesses called by the petitioner and respondent respectively, who had seen the land of the petitioner before and after the taking by the town, and when the land was unaffected by the construction of the channel as before described.

The judge permitted the photographs to be introduced in evidence; and the petitioner excepted.

There was evidence tending to show that the land in Brookline and in the vicinity of Harvard Street had been constantly increasing in value.

At the conclusion of the evidence, the petitioner asked the judge to rule as follows:

" 1. In determining the benefit, if any, which may be assessed against this petitioner under St. 1887, c. 99, under which the town acted, the question is whether the petitioner's estate has received any benefit and advantage in consequence of the act of the town beyond the general advantage to all real estate in the town, and if the petitioner's estate has received such benefit and advantage, a betterment may be assessed, but not to exceed one half of the amount of such adjudged benefit and advantage. 2. The difference, if any, between the value of the petitioner's estate before the alleged improvement, and its value at the time of the completion of such alleged improvement, less any deduction which should be made on account of any increase in the value of land arising from any other cause, is to be first ascertained in determining the amount of the alleged benefit. 3. The jury are to take the value of the petitioner's estate as a whole before the alleged improvement and compare it with its value as a whole after the alleged improvement, that is, its value after 46,600 square feet had been taken by the town for the purpose of the channel, and after the town had deepened and covered the channel, and then say whether the estate as a whole has or has not been benefited by the acts of the town in taking the land and then making the improvements as alleged. 4. The benefit to be assessed against the petitioner's estate must be a benefit which is special and direct, in distinction from a benefit which is general and applicable to all estates in the town. 5. If by reason of the alleged improvement there has been an improvement in the sanitary condition of the neighborhood by reason, for instance, of the removal of a pool of water, such a benefit cannot be assessed to the petitioner. 6. The possibility that the town of Brookline now or hereafter may lay out a way over the location of the covered channel cannot be considered by the jury in determining the amount of any benefit to be assessed to the petitioner's estate. 7. The possibility that a way may be continued from Harvard Street to the location of the covered channel also cannot be considered by the jury in determining whether the petitioner's estate has received a benefit. 8. If by reason of the laying out of the covered channel surface water from other parts of the town, which theretofore had been allowed to flow upon the petitioner's land and form a part of

the pool of water in the rear of the petitioner's land, has been removed or has been caused to flow within the covered channel, such removal of the water or diversion thereof would not constitute a benefit for which any assessment can be made against the petitioner's estate. 9. If the jury find that a portion of the petitioner's land was in no other way affected by the laying out of the covered channel than by the removal of an unsightly object or a pool of water, such fact alone would not warrant the jury in finding that other land of the petitioner not immediately adjoining such pool of water had been benefited. 10. If, as claimed by the petitioner, the land as taken by the town leaves the remainder of the petitioner's estate in such situation that according to a reasonable and proper plan of development certain lands would be too deep and certain lands too shallow to sell to advantage, the jury should consider these circumstances in determining whether the petitioner's estate has received a benefit as claimed by the town. 11. The jury in determining what benefit was received by the petitioner's land, if they find there was any such benefit, cannot consider in any aspect of the case the award made by the selectmen of the respondent town. 12. Upon the evidence the town had no right to locate the catch basins outside of the location of the land taken for the channel, and if the petitioner's land has received any benefit in consequence of the drainage by means of said catch basins, such benefit cannot be considered by the jury, and is not a charge or tax against the petitioner's estate. 13. The jury should consider the size and cost of a drain suitable to drain the petitioner's estate in determining the amount the petitioner ought to pay. 14. The object of the betterment is to reimburse the town or city for money reasonably expended for the benefit of estates in a particular district, and such reimbursements ought to come from all estates in the district receiving benefit, not shared generally by all estates throughout the city or town, and each estate so benefited ought to contribute in proportion to the benefit it derives, not exceeding one half thereof. 15. Upon the evidence no betterment can be properly assessed under the St. 1887, c. 99. 16. The statute only authorizes the change of the channel of a watercourse, therefore, if the town has constructed an independent drain, not intended as a channel for the watercourse and not adapted for

that purpose, but designed merely to serve as a drain for the adjoining land, such drain is not within the authority conferred by the statute."

The judge, when handed the plaintiff's requests for rulings, stated that he should not give them, and instructed the jury, among other things, as follows :

" The selectmen of the town of Brookline, for the purpose of surface drainage, may, within the limits of the town, improve the brooks and natural streams flowing in or through the town, by widening the same, removing obstructions in or over the same, diverting the water, altering the courses or deepening the channels thereof; and, the more effectually to make such improvements, may take land, in fee simple or otherwise, not exceeding four rods in width, on either side of the present channels of any such brook or natural stream, or for new channels into which the waters or any surface waters may be diverted, within the limits of the town.

" Now, in this case it is admitted that the respondent, under this act, took this land for the purpose of building this sewer, allowing it to be used, — the surface of it to be used, — but for the purpose of forever maintaining a sewer, and you are to take that fact for granted in the consideration of this case, that that was lawfully and properly taken by the town for this purpose.

" When that was taken, the petitioner had a right then to have the damage for that taking, whatever the damage was for taking that four feet, or whatever its width was, of land to construct that sewer, or drain, as it is called more properly, paid for, and he had a right also to be paid if it would interfere with the rest of the land as to making it less valuable.

" Anything which could have been paid for, and was proper to be paid as damages for taking the land for the sewer, cannot be considered in this case, and therefore if there is any evidence that tends to show that, by the way this sewer was put in there, it interfered with the future development of that land to its best advantage, the presumption must be that that was considered in the other case, and cannot be considered in this.

" This is a proceeding, for the other matter, after the drain is built, under another section of this same statute.

" Under that, the town saw fit to build this drain, they saw

fit to take the petitioner's and other lands for the purpose of building it. They have paid, or they were liable to pay, all the damages to every person so affected by the taking of land, and when that was done and when the drain was completed, it being done by the authority of the town, and everybody that paid taxes having to contribute his share, the Legislature said that if anybody received a benefit from doing that which did not generally affect the town, that person should pay, not the whole but one half of what the whole benefit was. In other words they did not consider it quite fair, that if any one estate got a large benefit that the town should pay all the expenses, but that that estate should share in that payment. That is the theory upon which this act was constructed and is attempted to be administered. If a person has land so situated that by the improvement he receives an advantage or benefit above what the general public receives, he receives something of value which they do not receive, and he may be assessed what is called a betterment, and then the act provides that he shall not pay the whole expense, the whole benefit of what he has derived, but he shall only pay half of it.

" There are certain tribunals whose decisions are conclusive; there are others where the finding or decision is *prima facie* evidence. The Legislature has made no provision making this decision evidence, the finding or the adjudication by the selectmen. It appears, and must appear, because you are asked to reduce it, that the selectmen have adjudicated, in the language of the statute, and determined that this estate has received a benefit of $14,000, and that therefore under the statute he must be charged; now the parties come in here and the case stands in this way; that is not evidence either *prima facie* or in any other way. It is an adjudication which stands unless it is overcome by evidence. In other words, the petitioner here must satisfy you by a fair preponderance of the evidence that that is not the right adjudication, and if you find that is not you must determine what is the right one.

" Now, how is the question of whether that assessment of betterments was just and fair to the petitioner or not, because that is the question we are trying, to be determined? It is to be determined in several ways; I mean there are several things

which make up what is called evidence to be considered by the jury in determining this controversy, and what are they?

" One is that the jury go and take a view of the premises. It ought to have been so you could have taken a view just before they began these improvements, and just after, but that is not always possible when trying cases several years after the changes have been completed. In the first place, you went out there and looked at the property as it is now, and I gather from the evidence, that the improvements have not only been made, but a good deal of filling has been put in there, and you cannot therefore see it as it existed prior to the time of the original taking: but the parties were allowed to point out to you such things as would tend to show you what the original condition of things was, so far as they could, and you saw them as they now are. And then on that same line I have allowed them to put in some evidence of the description of it both before and since, and also to put in certain photographs, which, it is said, were taken when they did not show the natural condition of things, when some two feet of water was upon the premises. It seemed to me that inasmuch as you are trying to find out what the condition was before, and what it was afterwards, for the purpose of enabling you to judge of this betterment, that you ought to have all the aid possible, and I used what I think was my discretion, in allowing the respondent to put in those photographs for whatever value they were to you, under those circumstances. You are to remember, in considering them all, the facts that have been stated about them.

" Now, the way to determine what the benefit was would be to determine the value of the land before and after. What it would sell for before and after. . . .

" In determining, sometimes, the value of land taken, we have often put this test, and it is one of the best. There are two lots right side by side, situated just alike; the day before the one is taken by some authority, you sell one lot, just the same size, same shape, and situated exactly the same on the street, for a certain price, and immediately after some authority by right of eminent domain comes and takes the other lot, you would say the price for which the first lot sold should determine the price which the jury ought to assess for the second lot.

"Now, there has been some evidence offered here as to the value of this land before and after. Experts do not agree on the value before or after. There was a sale made to one New-hall. The respondent says this sale shows conclusively that here was a benefit, the best evidence in the world; but the petitioner says that in the first place there was a general rise in land, in the next place it was not really a sale which was a sale for cash and it is not to be considered, and you heard the arguments pro and con on that subject. So far as that evidence, the sales of other land in the vicinity, has affected this question you must consider it. There is the second mode of giving a jury aid in determining the question.

"Now, if Mr. Beals's estate really was benefited $7,000 he ought to pay it; it is just that he should pay it; if he was not benefited a cent he ought not to pay it, and that is the issue.

"Now if, when you are in your jury room, you shall find the evidence exactly balanced, and cannot say whether this assessment was right or wrong, why, you will put down $14,000 and $7,000. I will tell you why you do that. The assessment by the selectmen stands, unless evidence has been offered suf-ficient to overcome it, and to satisfy you by a fair preponderance of the evidence that that is not right, that they have made a mistake and that that assessment is not the proper amount, and that means that they did not find the betterments to be of the proper amount in the case. If you should be of the opinion that they were and that the betterment is $14,000, then you would write in $14,000, you would write in $7,000 also, because you can only give half of that. If you should be of the opinion that this was too high an assessment, then you may reduce it and may write 'nothing,' if you take the view of the petitioner's expert witnesses. You would write that, and the total amount to be assessed would be nothing. If you should take the full view of the claim as presented by some of the experts, that really the putting in of this drain there was no benefit to this estate, then you would write 'nothing' in both these places. If you find that it is something less than the sum named by the assessors, then you will put in whatever sum you find.

"That is about all I can say except one matter. . . . Suppose that valley down there had been a source of menace such as to

affect the health of the people of the town, why, undoubtedly such a condition as that would be a detriment to the town and everybody would be affected by it. Now, here I do not understand, although the evidence is for you, there is any claim that there was anything except surface water there, or what springs made it. It is only when it comes within the provision of the statute, where it is provided that it is an advantage to one estate which other estates do not share, that the estate is to be assessed. And in that view of the case the question is, was there an advantage there or a benefit to this estate which had water upon it, and like any of the others that were near to it, was it an advantage to that estate which was not shared in by all of the other people of the town generally? If it was, then it comes within the provision of this law. Anything that is a general benefit to the whole town and general public would not apply to this case, but it is where it is a special benefit or a benefit to an estate which does not benefit the other people of the town, as I have read and as the statute provides. Now, if you find that this was such a benefit to this estate, then you will assess the betterment in the way I have stated and determine this question which is submitted to you."

At the conclusion of the charge the judge said, " I will see whether counsel think there is anything I ought to say that I have not said. I have not attempted to follow the requests for rulings." Thereupon the counsel for the petitioner said that he thought that the judge had given all that he said he would give, and that he wished to save the petitioner's rights to the refusals to rule.

The jury found that the petitioner's estate had been benefited in the sum of $10,000, and accordingly reduced the assessment to the sum of $5,000; and the petitioner alleged exceptions.

*A. M. Lyman*, for the petitioner.

*C. A. Williams*, for the respondent.

HAMMOND, J. This is a petition for the revision of an assessment levied under St. 1887, c. 99, upon the land of the petitioner, for benefits arising from the improvements of the channel of Smelt Brook. It appeared that for the purpose of making the improvements a part of the land had been taken under the act.

Although in the first part of the trial the court refused to let

the petitioner put in a certified copy of this taking, yet at the close of the evidence, the respondent consenting, the court said to the counsel for the petitioner that he might read to the jury all of the taking except the part relating to the award of damages, but that the award of damages could not be put before the jury. The petitioner declined to avail himself of this permission, and excepted to the exclusion of the record.

There was no question that the cost of the sewer exceeded the amount of the assessments, and therefore the amount of the damages awarded upon the taking of the land was entirely immaterial on the question before the jury. If it was necessary for the petitioner to introduce the taking in order to show that the proceedings prior to the levying of the assessment were legal and so that he was properly before the court for an abatement, or to inform the jury as to the amount of the land left after the taking and his precise interest therein, he was permitted finally by the court to put in such parts of the record as related to those matters. Upon them the award of damages threw no light whatever. He has no cause for complaint as to the action of the court taken as a whole with reference to this record.

The question to Felton and that to Bennet were both properly excluded. The brook ran through the land of several people, and the subject of inquiry before the jury was the amount of benefit to the petitioner's land from the improvements made. It would not tend to elucidate that question to show what would be the reasonable cost of constructing a drain through the land of Beals alone. In the absence of anything to the contrary it is to be assumed that the plan adopted by the selectmen who were acting as public officers under a power specially delegated to them was proper and reasonable. The method of inquiry started by these questions would open up too many collateral issues, and the court might properly decline to enter upon it. And this latter remark is particularly applicable to the last part of the question to Felton.

The petitioner contended and offered to show that after the above mentioned taking of his land he was obliged to lay out his lots 50 by 100 feet, and he desired to show that such lots would not sell so well and were not so valuable as lots 70 by 70 feet. The court rightly excluded the evidence. So far as it

tended to show that the damage was caused by the taking it was immaterial, and so far as it tended to show the uses which could be made of the property as bearing upon the general value it was so far remote and collateral as to bring it within the exercise of the discretion of the court.

Under the circumstances disclosed in the bill of exceptions we think the court had the power to admit the photographs. In the admission of such evidence much must be left to the discretion of the presiding justice, and we are not prepared to say that there was error in law in permitting them to be shown to the jury. *Carey* v. *Hubbardston,* 172 Mass. 106. *Verran* v. *Baird,* 150 Mass. 141.

In admitting the record of the assessment made by the selectmen including the amount, and in charging the jury that the adjudication as to the amount was to stand unless the petitioner proved by the fair preponderance of the evidence that it was not right, the court acted in accordance with the law as laid down in *Bigelow* v. *Boston,* 120 Mass. 326, and other similar cases. It is unnecessary here to rehearse the reasons for the rule.

At the close of the evidence the petitioner presented sixteen requests for rulings. The presiding justice remarked that he should not give the plaintiff's requests, and then proceeded to charge the jury. It is unnecessary here to go over these requests in great detail, but we have compared them with the charge, and have come to the following conclusions.

The first four and the fourteenth requests were in substance given. The petitioner complains that the jury were not distinctly told to disregard in their estimate of benefits any increase in the value of the land from other causes than the work under the statute, but the whole tenor of the charge was to the effect that the benefit to be assessed must have been special and caused by that work, and the jury must have understood that. If the petitioner desired any more to be said on that subject he should have distinctly said so in reply to the question from the court. The court was plainly with the petitioner on that matter, had said something about it in the charge, and in the absence of any request for more specific instructions the petitioner must be presumed to have been content with what the court had said.

The fifth request does not correctly state the law. If by the

work the petitioner's land was made more healthy for occupation, we do not see why that was not to be considered even if there was a similar benefit to other real estate in the neighborhood. Benefits are none the less peculiar merely because some other people are similarly benefited. *Hilbourne* v. *Suffolk*, 120 Mass. 393.

The sixth and seventh requests were properly refused. At the view taken by the jury it appeared that between the time of the assessment of the betterment and the trial, a way had been in part constructed over the channel; but there was no evidence that the way had been laid out, constructed, or accepted by the town, and no contention was made by the respondent that any betterment should be assessed on account of the way; nor was any contention made by the respondent that the jury should consider in any way the possibility that the town might lay out a way over the location of the covered channel, or the possibility that a way might be continued from Harvard Street to the location of the covered channel; nor that the jury should take into consideration such way or any other possible future ways.

These requests called for a particular enumeration of possible future contingencies. The respondent made no claim that any of these could be properly considered by the jury as an item of benefit. The general rule that the benefit must result solely from the work done under the statute having been stated to the jury, it was within the discretion of the court, in view of the evidence and of this position of the respondent, to decline to make the special enumeration called for by the requests.

As to the eighth request it is a little difficult to understand what is meant by the word "allowed" in the phrase "which theretofore had been allowed to flow upon the petitioner's land." The petitioner, however, cites in his brief the following language from the bill of exceptions: "There was evidence that surface water flowed from an area amounting to about 150 acres, including a part of Corey Hill, down through the adjoining street, in and upon land of the petitioner, and increased the amount of water in the rear of the petitioner's land"; and says that the town has no authority to "precipitate" surface water upon the petitioner's land, and that the town would be answerable in

damages if it did so. It does not appear, however, that the town ever had precipitated any water upon his land. The most that can be said is that it does not appear that the town ever has done anything to prevent the surface water which came from Corey Hill from following the law of gravitation and crossing over the road into his land. For this inaction the town is not liable. It could with impunity allow this.

In the language of the older books, surface water is regarded very largely by the law "as a common enemy which every proprietor may fight or get rid of as best he may"; and a town is not answerable for "allowing" surface water to cross its highway upon adjoining land. *Flagg* v. *Worcester*, 13 Gray, 601. *Franklin* v. *Fisk*, 13 Allen, 211. *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, 13, 14. Much of the petitioner's land was low and swampy, and if by reason of the work done under the statute the surface water, from whatever source it came, was more speedily or more effectually taken from the land and that was a benefit, the jury might consider it.

As to the ninth request, it is sufficient to say that it was within the discretion of the court to single out any individual fact and rule upon the effect of that fact alone. Nor do we think it could be ruled as matter of law that the removal of a pool of water would not of itself be a benefit to land near the water but not abutting on it.

The tenth request would have been pertinent in a proceeding for the assessment for damages, but was entirely inapplicable to this suit. The petitioner had in law been paid for that damage.

As to the subject of the eleventh request, the jury were told in substance that they could not reduce the assessment made by the selectmen unless satisfied by the fair preponderance of the evidence that it was not right, and that on this question the assessment was "not evidence either *prima facie* or in any other way." This was an exact statement of the law, and was all the petitioner was entitled to on this point.

The petitioner was not entitled to the thirteenth request, for reasons hereinbefore stated when dealing with the exceptions to the exclusion of the questions to the witnesses Felton and Bennet.

It is manifest that the fifteenth request could not have been

given. There was evidence that the estate was benefited by the improvements, and the fact that the channel was covered would not prevent the use of it by the landowner for the purpose of carrying off the surface water by entering a private drain connected with the main channel, and it is to be assumed that such connections will be allowed under proper restrictions and regulations.

The petitioner was not entitled to have the sixteenth request given. The evidence did not warrant a finding that the town had "constructed an independent drain not intended as a channel for the watercourse and not adapted for that purpose"; and moreover this whole proceeding was upon the assumption that the acts of the selectmen were within the statute and valid.

The twelfth request was as follows:

"Upon the evidence the town had no right to locate the catch basins outside of the location of the land taken for the channel, and if the petitioner's land has received any benefit in consequence of the drainage by means of said catch basins, such benefit cannot be considered by you, and is not a charge or tax against the petitioner's estate."

Assuming, without deciding, that this was a correct statement of the law, the question is whether the failure to give the ruling requires that the verdict should be set aside. It appears by the evidence that outside of the land taken and upon the petitioner's land, four catch basins were constructed "the tops of which were about two feet lower than the top of the channel, and that said catch basins were connected by an open-jointed tile drain with the main channel."

The town engineer, who had charge of the work, testified that there were several of these catch basins along the line of the improvement; that they were laid with dry stone, and would be mainly useful only in draining the land before it was filled up; and that they were intended for temporary use as the land existed before the filling was done.

One Carr, called by the petitioner, the engineer who had charge of the filling, testified that in doing the filling he filled up the catch basins; and on cross-examination he testified that he imagined that the catch basins were merely temporary things to take the water that might come on the surface of those parts

where they were constructed, and take it off the land drained, and that it was what he should put them in for; that he supposed that it was intended and expected that they would be covered up eventually, and that the operation of the filling would be to destroy the use of the catch basins.

There was testimony that the drainage of the petitioner's estate was effected through the tiled drain underneath the main channel, and to some extent by these catch basins, by the water running down through the same into the tiled drain, and up the chimneys into the main channel. There was no evidence that the petitioner or his predecessor in title who owned the land at the time of the laying out of the brook channel had ever given the town permission to construct the catch basins, and no evidence that the petitioner or his predecessor in title was aware of the construction of them, or had ever objected to the construction, and no evidence of what the cost of the catch basins was apart from the rest of the work.

The jury at the view saw the land thus filled up.

It therefore clearly appears from the evidence that the catch basins were no part of the permanent improvement, and at the time of the trial they had ceased to exist; and that fact had become impressed upon the jury at the view. The counsel for the respondent stated in his closing argument to the jury that they were merely temporary things and of no consequence in the case.

The court seems either to have regarded that concession of the respondent as sufficient, or to have inadvertently omitted to give the ruling.

It appears by the colloquy between the court and the counsel for the petitioner, at the close of the charge, that there had been a discussion between them, in which there had been developed some difference of opinion as to the law of the case, and the court had informed counsel what rulings would be given. It is not to be presumed that they disagreed as to whether a ruling which was in accordance with the views of the counsel upon each side should be given. We think that if the counsel, at the close of the charge, intended to insist upon this request, instead of stating in reply to the question of the court that he thought the latter "had given all that he said he

would give," he should have called the attention of the court to the particular omission.

Under all the circumstances we are of opinion that the petitioner is not entitled to have a new trial because of the failure of the court to give the twelfth ruling requested.

*Exceptions overruled.*