# Wytheville.

## Miller & Meyers v. City of Newport News.

### June 11, 1903.

1. MUNICIPAL CORPORATIONS—*Failure to Abate a Nuisance in the Street.*
   A city is not liable in damages for failure to exercise its legislative
   and discretionary powers to abate or remove a nuisance in its
   streets which it did not create or does not maintain, and which does
   not render its streets unsafe.

2. MUNICIPAL     CORPORATIONS—*Private     Sewer—Nuisance—Failure     to
   Abate.*—If one constructs a sewer on his premises and through it
   discharges filth and garbage into a city street, thereby creating a
   nuisance, and also an injury to an adjacent lot owner, no action
   lies by such lot owner against the city for failure to provide a
   sewer or to abate the nuisance; his remedy being against the party
   creating the nuisance. The failure of a city to exercise a charter
   power to abate or prohibit a nuisance not rendering its streets
   unsafe does not give a right of action against the city.

3. WATERS—*Natural Water Course—Question for Jury.*—Whether or not
   a drain or ditch in a city is a natural water course, and whether
   the city has changed or altered its use, are questions for the jury
   under proper instructions from the court.

4. INSTRUCTIONS—*Read as a Whole—Erroneous Expressions—Harmless
   Error.*—Instructions should be clearly expressed and the law dis-
   tinctly stated, but a verdict will not be set aside because some
   expressions standing alone might be regarded as erroneous or mis-
   leading, if the instructions taken as a whole present the law fairly
   and correctly, and in a manner not likely to mislead the jury, or
   if the error in an instruction excepted to is corrected by other in-
   structions given by the court.

5. MUNICIPAL CORPORATIONS—*Surface Water—Sewers.*—A city is not lia-
   ble for failure to provide sewers to carry off surface water, or for
   failure to relieve a lot owner's property of burdens put upon it by
   nature.

6. MUNICIPAL CORPORATIONS—*Surface Waters—Streets—Side Ditches—
Natural Water Courses—Case at Bar.*—A city has the right to con-
struct ditches along its streets, and to drain its surface water into
a ditch or drain which is its natural course, for the purpose of
draining its streets, even though the quantity of water increases in
time of rainy weather, and diminishes at other times. The only
duty, in this respect, devolving upon the city, is to exercise rea-
sonable care and skill in doing the work. In the case at bar the
water flowed in a natural channel or outlet, and the city exercised
no control over it as a public sewer or drain.

Error to a judgment of the Circuit Court of the city of New-
port News, rendered December 12, 1901, in an action of tres-
pass on the case, wherein the plaintiffs in error were the plain-
tiffs, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

J. C. Baker, A. C. Peachy and C. A. Ashby, for the plaintiffs
in error.

J. A. Massey, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Plaintiffs in error are the joint owners of five vacant lots
situated in the city of Newport News, fronting on Twenty-fifth
street, and brought their action to recover damages of the city
because of the condition in which it is alleged their lots are
kept by reason of a certain ditch or drain which goes over them
and empties into Newport News creek.

This action is based upon the theory that (1) the city, by
artificial means and channels, collected the surface water along
its streets and avenues, and poured the same upon the lots in
question; (2) that, granting that some of this surface water
would voluntarily go on the lots, the defendant city had largely
and injuriously added to this amount, so that there is always a

stream flowing over these lots, and an entirely different stream from that originally passing through the said ditch or drain, in that it is now filthy and unhealthy, and entirely destroys the use of the lots; or (3) that the said ditch or drain is maintained so as to be a nuisance, rendering said lots uninhabitable.

The action is defended on the ground that the nuisance complained of was not created by the city, but the ditch or drain is, and always was, a natural water course, and was not cut, constructed, or altered or used by the city.

The proceedings in the Circuit Court resulted in a verdict and judgment for the defendant city, which we are asked to review and reverse upon the grounds (1) that the verdict and judgment are contrary to the law and the evidence; and (2) the court misdirected the jury by the giving of certain instructions for the defendant city, and the refusal of two instructions asked for by the plaintiffs.

It appears that the city of Newport News was incorporated by an act of the General Assembly, approved January 16, 1896. (Acts 1895-'96, p. 74, c. 64.) Miller, one of the plaintiffs in error, acquired the five lots in question in 1897, and conveyed one-half interest therein to Meyers, his co-plaintiff in error, in September, 1898. The city is divided by the tracks and yard of the Chesapeake & Ohio Railway Company, and in the fall of 1899 the city built a bridge over the railway tracks and yard in Twenty-fifth street, one end of which bridge is very near plaintiffs in error's lots, and this fact increased their value enormously, as is conceded. The lots were, at the time they were bought by plaintiffs in error, and still are, 9 or 10 feet below the grade of Twenty-fifth street and Warwick avenue; in fact, they are very low lots, and from the formation of the land the natural surface drainage of a part of the city is through the drain across Warwick avenue and Twenty-sixth street, over the lots of the Old Dominion Land Company to the lots of plaintiffs in error, thence into Newport News creek;

and the city has reduced the amount of territory drained through this natural outlet by the construction of the approaches to Twenty-fifth and Thirty-fourth street bridges. No city property or city sewers drain through this outlet, as admitted by plaintiff in error Miller testifying in his own behalf; and the filthy and unsanitary matter which is conveyed by this natural drain across these lots comes either from private property or from the streets, some of which are paved and others not paved. The ditches made on the sides of the streets that plaintiffs in error complain of were caused by the working of the streets and turning the water from the middle to the sides. The lots of plaintiffs in error are in the same condition they were at the time they were purchased, and the city has exercised no ownership or control over this natural water course through the lots. Plaintiffs in error's witness, Lentz, states that the ditch or drain which runs across these lots is a natural water course, and has been since he came to the city in 1885, and in fact, he says, "That ditch has been there since the day of Adam," meaning thereby to say that from the lay of the land the natural flow of the water has always been through this outlet; and this fact is testified to by a number of witnesses examined on behalf of the city.

Upon this evidence before the jury, clearly their verdict should not be disturbed, unless the Circuit Court has erred in giving or refusing instructions.

In submitting the case to the jury the court gave four instructions asked by plaintiffs in error and a like number asked for by the defendant. Exceptions are taken to the refusal of the court to give instructions numbered 1 and 4 asked by the plaintiffs in error, and to the giving of the four instructions asked by the defendant.

By instruction No. 1 the court was asked to tell the jury that a city is liable for failure to exercise its legislative and discretionary power to abate or remove a public nuisance, whether

caused by itself or private parties. The instruction was properly refused, as there was no evidence tending to show that, if a nuisance existed upon the lots of plaintiffs in error, it was caused by the defendant. The case here is very unlike the case of *Chalkley* v. *City of Richmond*, 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730, so much relied on by plaintiffs in error. In that case water from the James river was diverted from its natural course through an artificial sewer constructed by a third person, and afterwards, repaired and controlled by the city in one of its streets, and was allowed to flood the plaintiff's cellar.

Where one constructs a sewer on his premises, and through it discharges filth and garbage into the street, creating a nuisance, to the injury of an adjacent lot owner, no action lies in favor of such adjacent owner against the city for failure to provide a sewer or for a failure to abate the nuisance, his remedy being against the person offending for maintaining a nuisance. The mere fact that a nuisance exists, and has occasioned an injury to the third person, does not render the corporation liable, provided the nuisance was not created or maintained by the corporation itself. *Chattanooga* v. *Reid*, 103 Tenn. 616, 53 S. W. 937.

The failure of a city to exercise its charter power to abate nuisances not rendering its streets unsafe does not give persons injured by such failure a private action against the city, nor does a failure to make or enforce ordinances prohibiting nuisances give them such action against the city. 2 Dill. Munc. Corp., sec. 851; *Jones* v. *Williamsburg*, 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294; *Cain* v. *Syracuse*, 95 N. Y. 83.

In *Robinson* v. *City of Danville*, ante, p. 213, 43 S. E. 337, it is held that where a culvert erected under a railroad was subsequently extended by the city across a street, but neither the city nor any municipal body of the town before incorporation had ever passed any resolution concerning the culvert,

or in any way had assumed control over the same, the city was not liable to a property-owner for damages from its obstruction.

Instruction No. 4 asked by plaintiffs in error was also properly refused, it being wholly inapplicable to the case, as the defendant city made no claim of a prescriptive right to allow the water to flow upon the lots of plaintiffs in error, but maintained that the formation of the earth at this point was such that surface water, in seeking its level, naturally found its way over these lots, and that the city had not added to the quantity of water passing through this natural drain; and was not responsible for the unsanitary matter it accumulated and conveyed upon the lots.

Instruction No. 1 of defendant in error submitted to the jury the question whether or not the drain or ditch complained of was a natural water course, and whether or not the city had altered or changed its use. We are of opinion that the instruction was proper, and was rightly given.

We are further of opinion that defendant in error's instruction No. 2 is without a valid objection. This instruction embodies two propositions of law entirely applicable to the case; first, that a city is not liable for not providing and enforcing ordinances for the abatement of nuisances on private property which do not render its streets unsafe; and, second, that a city is not liable for not providing and enforcing ordinances for the abatement of nuisances in its streets not rendering them unsafe for travel, and not created or maintained by itself, but occasioned by the acts of private individuals alone.

Whether or not the nuisance complained of here was created by private individuals alone, as distinguished from any acts of the city, either singly or jointly with others, was left to the jury. The objection urged to this instruction is that it purports to contain a complete statement of the law, and leaves out of view the question whether the city, by artificial means, turned

surface water on the plaintiffs in error's lots. If it were con-
ceded that this objection to the instruction is well taken, we are
unable to see that plaintiffs in error were prejudiced thereby.
The jury were told by plaintiffs in error's third instruction that
they were to read all of the instructions together in considering
of their verdict, and the question whether the defendant in
error, by artificial means, turned surface water on plaintiffs
in error's lot is submitted to the jury by other instructions deal-
ing with that question.

Instructions to the jury should be clearly expressed, and the
law clearly and distinctly stated, but a verdict will not be
set aside because some expression standing alone might be re-
garded as erroneous or misleading if the instructions taken as
a whole present the law fairly and correctly, and in a manner
not likely to mislead the jury, or if the error in an instruction
excepted to is corrected by other instructions given by the
court. *Washington, A. & Mt. V. Electric Ry. Co.* v. *Quayle,*
95 Va. 749, 30 S. E. 391; *Russell Creek Coal Co.* v. *Wells,* 96
Va. 416, 31 S. E. 614; *Kimball* v. *Borden,* 97 Va. 477, 34 S.
E. 45; *Rich. Traction Co.* v. *Hildebrand,* 99 Va. 48, 34 S. E.
888.

We are further of opinion that the Circuit Court did not
err in giving defendant in error's third and fourth instructions.
The third told the jury that there is no liability upon the city
for failure to provide sewers to carry surface water, or for fail-
ure to relieve the plaintiffs' property of burdens put upon it by
nature; and if they believed from the evidence that the drain or
ditch complained of was not constructed by the city, but ex-
isted as such before the incorporation of the city, there is no
liability upon the city for allowing surface water to find its-
way into this ditch and be carried through the same.

The fourth instruction simply told the jury that a city has a
right to construct ditches along its streets and drain the surface
water into a ditch or drain which was its natural course, for the

purpose of draining its streets, even though the quantity of water increases in the time of rainy weather and diminishes at other times; and, if the jury believed from the evidence that such was the object of the city in constructing the small drains on the sides of its streets, there is no liability upon the city for so doing.

We are unable to see the force of the contention of counsel that defendant in error's third instruction conflicts with plaintiffs in error's fifth instruction, which, in effect, told the jury that if they believed from the evidence that the defendant in error had assumed and exercised control of the big ditch or drain in question, there was liability upon the city from the time it so assumed and exercised such control, and it was immaterial who may have first built or established the ditch or drain, and that any altering, repairing, or giving authority to do so, furnishing labor, implements, and official supervision and direction of the work by the city and its agents, were to be considered in determining whether the city had assumed and exercised such control.

Nor is defendant in error's instruction No. 4 liable to the objection that it took from the jury the question whether or not the ditch or drain was a natural water course, and made the "object" of the city in draining its streets the *gravamen* of its liability.

"Town officers, in repairing highways, may construct drains and culverts within the limits of the highway; and if the surface water, after flowing in them for some distance, turns upon the land of an adjoining proprietor, no action at law lies for damages thereby occasioned. Town officers are bound to make every highway safe and convenient for travellers; and they and their officers are protected in doing it so long as they act within the scope of their authority, and execute their work in a reasonably safe and skilful manner, although their operations cause the surface water to flow upon the adjoining proprietors

in large quantities to their injury. Their rights are commensurate with their duties. They are not bound to submit the propriety of their judgment or their methods in making repairs within the scope of their authority to the supervision of a court or jury." Angell on Water Courses, sec. 108.

The law as stated by that learned author is sustained in *Powell* v. *Town of Wytheville*, 95 Va. 72, 27 S. E. 805; citing a number of other decisions of this court.

.The case of *St. Paul, &c. Ry. Co.* v. *Duluth* (Minn.), 58 N. W. 159, 23 L. R. A. 88, 45 Am. St. Rep. 491, was very similar, in many respects, to the case at bar, and it was there held that there is no liability upon a city where it, by means of artificial sewers, collected surface water on the hillside, and conveyed it to its common and natural dumping ground, the plaintiffs' property, made such by nature, and not by the city. In the opinion it is said: "The plaintiffs seem to forget that nature, and not the city, has made this place such dumping ground, and the city has never relieved the land of such servitude;" and in conclusion it is said: "Can the owner of a swamp improve it, and then compel the owner of the higher land around it to keep the surface water naturally tributary to the swamp from coming from the higher lands upon the swamp? We think not."

. Another case in point is *Waffle* v. *New York Central Ry. Co.*, 59 N. Y. 11, 13 Am. Rep. 467, where the court said: "The defendant had an absolute right to drain the surface water from its land into the stream which was its natural outlet, through ditches constructed upon its own land, although the quantity of water in the stream was thereby increased in times of high water and diminished at other times. A proprietor having the right to reclaim his land by draining the surface water therefrom by ditches discharging into a stream running therein, which is the natural outlet of the water, the object of so doing, whether for the erection of buildings, agriculture, or

the construction of a railroad, is wholly immaterial.  He may so drain whenever disposed to do so, irrespective of the object."

It would seem unnecessary to review other authorities cited in support of the proposition of law that a city. has a right to construct ditches and drains for the purpose of draining the surface water from its streets into a ditch or drain which is a natural water course, so long as reasonable care and skill are exercised in doing the work.

As .opposed to the propositions of law laid down in the instructions given at the instance of defendant in error in this case, counsel cite a number of authorities, but we deem it unnecessary to review them, as they are cases where water was collected and discharged on the premises where it would not have naturally gone, or where sewers have been constructed to empty into a water course, polluting it.  These authorities do not distinguish between artificial modes of drainage, diverting water from its natural course on to private property, from the natural flow of surface water.  They would be applicable to a case where a city had constructed, owned, and controlled a sewer which emptied upon an adjacent proprietor's lot, or had diverted surface water or water of streams from its natural course, and poured it with increased force or destructiveness upon the adjacent owner's lot; or where a private culvert, sewer, or drain had, by the exercise of its corporate powers, been taken control of by a city, and converted into a public one.  That was the case in *Chalkley* v. *City of Richmond, supra.* But, as shown in *Robinson* v. *City of Danville, supra,* that was a very different case from one in which the city has exercised no authority or control over a culvert, sewer, or drain emptying upon a land-owner or overflowing the land by becoming obstructed.

The primary questions in this case are, first, whether the surface water emptying upon the lots of plaintiffs in error, of

which they complain, flows through its natural channel or out-
let; and, second, whether or not defendant in error has under-
taken to control this natural flow of water, or to exercise any
control over it as a public sewer or drain.   The first question
being answered.in the affirmative and the second in the nega-
tive, there could be no recovery of the defendant in error for
damages to the lots of plaintiffs in error.   *Robinson* v. *City of
Danville, supra.*

We are of opinion that the judgment of the Circuit Court
should be affirmed.

*Affirmed.*