16746

HILL *ET AL.* v. CITY OF GREENVILLE
(76 S. E. (2d) 295)

*Messrs. A. C. Mann* and *W. H. Arnold,* of Greenville, *for Appellant,*

394

*Mr. Frank G. Carpenter,* of Greenville, *for Respondent,*

May 14, 1953.

STUKES, Justice.

This appeal involves the construction and application of section 7301 of the Code of Laws of 1942 which is as follows:

"Whenever within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare, over the private lands, property adjacent or adjoining such thoroughfare, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage for such water through open or covered drains except where the formation of the street renders it impracticable, along or under such streets, alleys or other thoroughfare in such manner as to prevent the passage of such water over such private lands or property: provided, that if such drains cannot be had along or under such streets, alleys or other thoroughfare, then the municipal authorities shall have the power and authority to obtain under proper proceedings for condemna-

tion as for highways on payment of damages to the landowner, a right of way through the lands of such landowner for the necessary drains for such drainage. If any municipal corporation in this State shall fail or refuse to carry out the provisions of this section, any person injured thereby may have and maintain an action against such municipality for the actual damages sustained by such person."

In May, 1939, the plaintiffs purchased and moved to what is now 13 Ackley Street in the City of Greenville. It is a large lot with frontage of about 275 feet and depth of about 425 feet. It is separated from the intersection (to the north) of Ackley Street and Laurens Road by another large lot which fronts 212 feet on Ackley and upon which a church was being built at the time of the trial of this case. Between the lots, or just on plaintiffs' property, is an open ditch which follows the boundary line for a hundred feet or more and then meanders in a southeasterly direction through a low area on plaintiffs' lot and on across a new street, where there is a culvert, and finally to what is designated as a park on the plat in evidence.

The comprehensive plat has been most helpful; it contains contour lines on plaintiffs' and adjoining property, and directional arrows which show the flow of surface waters on the streets and contiguous lots. From the plat and the testimony, it is clear that the rear of plaintiffs' property is a relatively low area, referred to in the complaint as a swamp, to which the surface water from Ackley Street, augmented by that from Laurens Road, naturally flows.

Laurens Road was paved about 1921 by the State Highway Department and improved in 1940 by the installation of curbs and gutters, which increased the flow of surface water from Laurens Road into Ackley Street whence it finds its way into the drainage ditch and plaintiffs' premises. The evidence was in conflict as to the time of origin of this ditch. One of the plaintiffs testified that he cut it with his plough and shovel after the above Highway Department work increased the volume of water, but there was other testimony

that it has been in existence since 1926 or earlier. In the view which we take of the applicable law this disputed fact is unimportant, because it is undisputed in the evidence that the damaging increase of water resulted from the highway construction and improvement of Laurens Road, all years before annexation to the city.

All of the area which has been mentioned was annexed to the appellant City of Greenville as of January 1, 1949. Before that it was unincorporated. Plaintiffs demanded of the city after annexation that it provide drainage which would protect their property from damage from the surface water which entered it through the ditch from Ackley Street. The city did nothing and this action for damages was brought in August 1951. The trial court submitted to the jury the issue of liability of the city under the quoted statute. In our view the statute creates no liability under the facts of this case and verdict should have been directed for the defendant, upon failure of which appellant's motion for judgment notwithstanding the verdict for plaintiff should have been granted. There was no appeal by plaintiff from the following findings of the court which are contained in the order refusing judgment *non obstante:*

"The evidence reveals that any accumulation of surplus (*sic*) waters from that whole drainage area took place when the Highway Department redid the Laurens Road, put in curbs and gutters, and that that was the inception of the excess water over the normal flow in that area. Of course, the City had nothing to do with that. That is conceded; and, from my observation of the testimony, I don't think that any reasonable inference could be drawn from that testimony that the City has done anything subsequent to the annexation of that area to increase or to contaminate or in any other wise put additional burden on the flow of the water over the plaintiffs' land; * * *."

It would be quite unfair, unless required by the statute, to hold the city liable for delict of the State Highway Department which was committed years before plaintiffs' prop-

erty became a part of the city; yet that would be the result of affirmance of the judgment which was rendered in this case. The appellant city and the respondents agreed in argument that the statute should be strictly construed, favorably to the city; but we think a fair construction, neither strained in strictness nor liberal beyond the ordinary meaning of the language employed, clearly results in its inapplicability here.

The statute plainly contemplates positive action by a municipality to render it liable for damages under the terms of it. The words are, repeating, "Whenever * * * it shall be necessary or desirable to carry off the surface water from any street * * *, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage", etc. In this case the city did nothing; upon annexation, it took the territory, the plaintiffs' and others' lots and the streets as it found them, and until the city undertakes, quoting again from the statute, "to carry off the surface water from any street * * * over the private lands," no liability arises under the statute. The city has so far not deemed it "necessary or desirable to carry off the surface water from" Ackley Street. If and when it does, by any artificial or added means, the terms of the statute may apply. This we take to be the simple meaning and effect of the words of the statute, and there is no occasion to resort to rules of construction. *Independence Insurance Co. v. Independent Life & Acc. Ins. Co.,* 218 S. C. 22, 61 S. E. (2d) 399.

The only decision which directly involves the statute with which we are here concerned appears to be *Macedonia Baptist Church v. City of Columbia,* 195 S. C. 59, 10 S. E. (2d) 350, 353. There verdict for the landowner was affirmed and the testimony upon which recovery was sustained was reviewed *in extenso* by the court. It appears that the defendant city had opened ditches, widened roadbeds, paved streets, of one of which the grade was raised, and built an embankment alongside a creek which diverted the surface waters from their natural drainage and discharge them with great force upon the premises of plaintiff. Careful study of the

judgment of the court is convincing that the verdict for plaintiff was allowed to stand because of these affirmative acts of the city and it is fairly inferable from the opinion that opposite result would have followed in the absence of such acts by the city which proximately caused the damage to plaintiff's property. The court referred to the fact that the city was carrying surface water to the property of the plaintiff and did nothing thereabout after notice; again it was said that the property was damaged by surface water thrown upon it by the city; and finally, quoting: "It is useless to cite more of the evidence, there is much of it, to show that there was sufficient proof of negligence, on the part of the City tending to make it, under the statute, guilty of actionable negligence, to take the case to the jury." It is thus clearly seen that the foundation of the recovery was damage which resulted from overt acts of the city which it failed to remedy after notice. The following is a further quotation from the opinion: "As we have shown by the testimony hereinabove cited, only in part, through the active agency of the City, its agents and servants, the natural flow or drainage of the surface water of Tree Street Alley was changed and cast upon plaintiff's property, and there is ample evidence in the record that the surface water from paved streets and certain private property was so directed by the City as to send it down Pendleton and Huger Streets with accelerated velocity on the property of the plaintiff, and thus damaged plaintiff's property." There was a multitude of injurious acts by the city in the *Macedonia case,* none here.

Analogy is found in the Virginia case of *Miller & Meyers v. City of Newport News,* 101 Va. 432, 44 S. E. 712, 714. There verdict for defendant was sustained. The appeal was largely concerned with the instructions to the jury. The following was approved: "The third [instruction] told the jury that there is no liability upon the city for failure to provide sewers to carry surface water, or for failure to relieve the plaintiffs' property of burdens put upon it by nature; and if they believed from the evidence that the drain or ditch

complained of was not constructed by the city, but existed as such before the incorporation of the city, there is no liability upon the city for allowing surface water to find its way into this ditch and be carried through the same."

There is an exhaustive annotation upon the rights ██ and duties of municipal corporations with respect to surface water in 65 L. R. A. 250. Near the outset it is said, at page 252, with reference to the situation presented by the instant case, where the city has done no work to affect the flow of water, as follows: "In the natural condition of the highway, the surface water flows naturally to the lowest level, and the burden rests where it falls, either on the highway, or on the adjoining property. Neither the public, nor the abutting owner, is under any obligation to care for the water for the benefit of the other." Digests of the holdings of numerous decisions are appended in support of the quoted rule, some of which follow: The mere existence of a highway does not make it the duty of the town or city where the highway is to keep the water flowing in it from overflowing on the adjoining lands. Such a duty devolves on a town or city only when it has done something to increase the volume of the water, or to accumulate it in unusual quantities at some particular point of the highway. *Smith v. Tripp,* 13 R. I. 152. A municipal corporation is not liable for the flooding of premises due to the want of drainage in a particular street in which the city has not exercised its general power to construct sewers and drains in the public streets by providing drainage therefor. *Daniels v. City of Denver,* 2 Colo. 669. A municipal corporation is not liable for failure to take steps to prevent surface water from a large area of territory from flowing in its natural course, so as to flow and accumulate upon the land of a particular individual. *Beals v. Inhabitants of Brookline,* 174 Mass. 1, 54 N. E. 339. A recovery cannot be had against a municipal corporation for the flowing of surface water upon an owner's land from adjacent public streets or lots, merely because such land is below the level of such streets or lots. *Weis v. City of Madison,* 75 Ind.

241, 39 Am. Rep. 135. The mere fact that water falling on a street runs down onto adjoining property will not give a right of action. *Alden v. City of Minneapolis,* 24 Minn. 254; *Lee v. City of Minneapolis,* 22 Minn. 13.

The case *sub judice,* being concerned solely with an alleged liability which is claimed to have arisen under the terms of the statute which is section 7301 of the 1942 Code, is distinguished from our former decisions which involved other grounds of liability, such as *Mayrant v. City of Columbia,* 77 S. C. 281, 57 S. E. 857, 10 L. R. A., N. S., 1094, and *Wilson v. City of Laurens,* 134 S. C. 271, 132 S. E. 590. The cited statute, then a recent enactment, was quoted in the *Mayrant case* but interpretation and application of it were expressly avoided; the following from the opinion in that case, 77 S. C. at page 285, 57 S. E. at page 858, supports our present conclusion:

"No one will doubt that, in the absence of a statute, the power to say whether a drainage system shall be established, when it shall be established, and in what manner it shall be established, is discretionary with the corporation. No person can claim drainage as a right where it is not provided for by statute, if the municipality does not choose to establish such system. It can in no case be held responsible for the ravages of surface water, where such water follows its own course unmolested. Farnham on Waters and Water Rights, § 171a, and authorities there cited. When, however, the city authorities have consulted and adopted a certain plan of drainage, in other words, have exercised their legislative and judicial functions with regard thereto, the carrying out of this plan becomes merely a ministerial duty, and for negligence in the execution of it the town or city is liable. In a very extended note on the subject in 29 Am. St. Rep. 739, Mr. Freeman, quoting many cases to support his conclusion, says: 'The authorities are numerous and uniform in holding that after the adoption of a plan of sewerage or drainage by a city the manner of its execution by it becomes, with respect to the right of the citizens, a mere ministerial duty, and that

for any negligence or unskillfulness in the execution or construction of the work, whereby injury is inflicted upon a private right, the municipality will be responsible.' See, also, Dillon on Municipal Corporations, §§ 1047-1051; *Tate v. City of St. Paul,* 45 Am. St. Rep. 500, and note; *Seifert v. City of Brooklyn,* 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664, and cases cited."

An overriding principle of the law of this State, which is applicable to this and similar cases, is that a municipality is a subdivision of the State for governmental purposes and partakes of the State's immunity from suit in tort except as expressly permitted by statute and, of course, except for liability under self-executing constitutional provision. The statute invoked in the case at bar falls short of authorization of the action for the reasons which have been stated, hence the result.

Reversed for entry of judgment for the defendant.

FISHBURNE, TAYLOR and OXNER, JJ., and G. BADGER BAKER, A. A. J., concur.