COMMONWEALTH *vs.* JACOB W. BARNEY.

It is not a question of law for the court, whether a certain building is "within the curtilage of a dwelling-house," as alleged in the indictment, but a question for the jury upon the evidence, and upon proper instructions from the court as to the definition of curtilage.

Curtilage in law means a fence or enclosure of a small piece of land around a dwelling-house, usually including the buildings occupied in connection with the house, and this enclosure may consist wholly of a fence, or partly of a fence and partly of the exterior side of buildings so within the enclosure.

An indictment for burning a barn situate at a certain place, which was within the jurisdiction of the court, and alleged to be "within the curtilage of the dwelling house of A." need not also aver that the dwelling-house was at that place.

INDICTMENT under Rev. Sts. *c.* 126, § 1, for burning a barn in Seekonk, belonging to Solomon Peck, Jr. The indictment charged that the defendant, "of Seekonk, in the county of Bristol, at Seekonk aforesaid, on the fifteenth day of January, in the year one thousand eight hundred and fifty-two, in the night time, &c. a certain barn, of one Solomon Peck, Jr. there situate, said barn then and there being within the curtilage of the dwelling-house of said Peck, wilfully and maliciously did set fire to, &c." At the trial, in the court of common pleas, before *Wells*, C. J. it appeared that the barn referred to in the indictment was on the corner of a lot described on a plan which was produced by the government, and admitted by the defendant to be correct. The defendant contended that the barn, as shown on said plan, was not within the curtilage of the dwelling-house, as alleged in the indictment, and that this was a question of law for the court, and not a question for the jury.

But the presiding judge ruled that it was a question for the jury upon the evidence, and such instructions as might be given them, and upon this point he instructed the jury that the word "curtilage" was not a word ordinarily used in this country, but seems to have been in common use in England; that it was there used as synonymous with court yard. In law, it meant a fence or enclosure of a small piece of land around a dwelling-house, usually including the buildings occupied in connection with the use of the dwelling-house; and that this fence enclosure might be either a separate fence, or might consist partly of a fence and partly of the exterior of buildings so within this enclosure. The jury having found the defendant guilty, he alleged exceptions to the foregoing ruling so far as it was left to the jury to determine whether the barn upon the evidence was within the curtilage of the dwelling-house. The defendant also moved in arrest of judgment, because the indictment did not aver that the house of said Peck, within the curtilage of which the barn was alleged to be, was in the county of Bristol, or in the commonwealth of Massachusetts. But this motion was overruled by the presiding judge.

*T. G. Coffin,* for the defendant.

*Clifford,* (attorney-general,) for the commonwealth.

DEWEY, J. In the opinion of the court, the motion in arrest of judgment is not well taken. It is true that in the offence charged here, that of the wilful and malicious burning of a barn, the description of the proximity of the barn to a dwelling house is material in giving character to the crime, and also in regulating the degree of punishment. The offence of burning the barn is alleged in the indictment to have been committed at Seekonk in the county of Bristol, and the barn is alleged to be situate at Seekonk, and as to that no exception is taken, but the ground of the objection to the indictment is the omission of any averment that the dwelling-house, within the curtilage of which the barn is alleged to be, was also situate in Seekonk. It seems to us sufficient, if the barn alleged to be maliciously and wilfully set fire to by the defendant, was situate in Seekonk, and being thus situated, was

also within the curtilage of a dwelling-house. The high criminality of the offence consists in maliciously setting fire to a building so contiguous to another building occupied as a dwelling-house. The offence alleged is sufficiently charged as having been perpetrated at Seekonk in the county of Bristol, by setting fire to a barn there situate, and the omission of an allegation that the dwelling-house of Solomon Peck, Jr., within the curtilage of which the barn was, was also in Seekonk, does not render the indictment substantially defective.

The further question arises upon exceptions taken to the ruling of the presiding judge at the trial of the case before the jury. The point taken was as to what was the legal meaning of the words " within the curtilage of a dwelling-house."

The court instructed the jury as to this, stating what proximity and connection with the dwelling-house was required to bring the location of the barn within the curtilage of the dwelling-house, and after thus stating the law, left to the jury to determine upon the whole evidence whether the barn was within the curtilage of the dwelling-house. It seems to us this was a proper course to present the case to the jury, and the only question for consideration is whether a proper definition or description of the term curtilage was given. This term " curtilage " is not perhaps as well defined in the treatises on the criminal law as might be expected from its long usage and frequent introduction into statutes. It is often illustrated by the questions raised in trials for burglary. The party is charged with breaking and entering the mansion-house, and the entry proved is into some outer building, as a barn, stable, or warehouse. It is said that if the barn, stable, or warehouse be parcel of the mansion-house, and within the same common fence, though not under the same roof, or contiguous, a burglary may be committed therein; for the capital house protects and privileges all its branches and appurtenances, if within the curtilage. 4 Black. Com. 224; 1 Hale, P. C. 558. To the point that " curtilage " and " court-yard " are used as synonymous, see Roscoe, Cr. Ev. 277.

It is said that any outhouse within the curtilage, or same common fence as the mansion itself, was considered to be parcel of the mansion; 2 Russ. on Crimes, 13; thus showing that the common fence is the extent of the curtilage.

We have no doubt that the term curtilage, as held by the treatises on criminal law, is as extensive in its definition as was stated by the presiding judge. Indeed it would seem that it has been deemed expedient in England to restrict cases of burglary within some other limits than the usual and well approved definitions of curtilage would have restricted them; and hence by 7 and 8 Geo. 4, *c.* 29, § 13, it has been enacted " that no building, though within the same curtilage with the dwelling-house, shall be deemed to be part of such dwelling-house for the purpose of burglary, unless there shall be a communication between such building and the dwelling-house, either immediate, or by means of a covered passage leading from one to the other."

We have no such statute. The offence by our statute is the burning a barn within the curtilage of a dwelling-house. Taking the term in its general acceptation, as recognized in the numerous books of authority, and reported adjudications, the instruction to the jury was correct as an illustration or description of what was meant by the word curtilage.

*Exceptions overruled*