## 808. HUTCHINS *v.* THE STATE.

1. An indictment charging a burglary to have been committed in an out-house, contiguous to or within the curtilage, need not describe the same as having been committed in the dwelling-house, or that the outhouse is a part of the dwelling-house. The words, "All outhouses contiguous to or within the curtilage or protection of the mansion or dwelling-house shall be considered as parts of the same," as well as the words, "A hired room or apartment in a public tavern, inn, or boarding-house shall be considered as the dwelling-house of the person occupying or hiring the same," being included in the statute, are sufficiently descriptive.

'2. An indictment for burglary may charge a larceny after the breaking and entering, as illustrative of the intent with which the burglary was committed. In such cases the defendant may · be convicted of the larceny, though not guilty of the burglary.

3. A barn and corn-crib in which corn is stored is not the subject-matter of burglary, unless it be proved that it is within the curtilage of a dwelling-house, or unless it is alleged and proved that it is a place of business. A barn enclosed by a fence disconnected with the dwelling, and no portion of which is applied to the purposes of a dwelling-house, is not a dwelling-house within the terms of the statute against burglary.

Indictment for burglary, from Polk superior court—Judge Edwards. October 3, 1907.

Argued December 9,—Decided December 20, 1907.

*Janes & Hutchens, J. A. Wright,* for plaintiff in error.

*W. K. Fielder, solicitor-general,* contra.

RUSSELL, J. The defendant was convicted of burglary, and ex-·cepts to the judgment of the court overruling his motion for new ·trial. The evidence may show that the defendant stole two bushels of corn, but does not show that he is guilty of the offense of bur-·glary.

The special exceptions to the judge's charge, contained in the .amended motion for new trial, are also involved in the demurrer

to the indictment, and in the general ground that the verdict is contrary to the evidence; so that we shall consider the questions raised in the record, first, by determining whether the verdict of guilty is authorized under the allegations of the indictment or by the evidence. "Burglary," as defined in Cobb's Digest, p. 790. "is the breaking and entering into the dwelling or mansion-house of another, with intent to commit a felony. All outhouses contiguous to and within the curtilage or protection of the mansion-house shall be considered as parts of the mansion or dwelling-house —a hired room or apartments in a public tavern, inn, or boarding-house, shall be considered as the dwelling-house of the person or persons occupying and hiring the same." By the act of 1866 (Acts, pp. 151, 152), the statute was amended. By these amendments houses other than the dwelling were added and became the subject-matter of burglary. These, however, were limited to store-houses or other places of business where valuable goods, wares, products, or any other articles of value were contained or stored. By these amendments the statute was brought to its present proportions, as it appears in the Penal Code, §149. A specific objection to the indictment, raised by the demurrer and preserved by the exceptions pendente lite, is that the indictment charged the defendant with breaking and entering a barn within the curtilage and protection of the dwelling-house, contiguous to the same, the same being an outhouse, and stole the corn from said barn, when it should have charged that the burglary was done in the dwelling-house itself or should have alleged that the barn was part of the dwelling-house. It is well settled by a number of cases that where a party is indicted for breaking or entering an outhouse within the curtilage or protection of a mansion or dwelling, the burglary may be laid as having been done in the dwelling-house. See *Daniels* v. *State,* 78 *Ga.* 101 (6 Am. St. R. 238). But this method is not exclusive. It must be remembered that burglary was originally an offense against the habitation of the citizen. Burglary may be committed, in the terms of the statute, where there is no intention to steal. A breaking followed by a proved theft establishes the intention of that particular breaking; but if nothing were stolen, it would not follow that a burglary had not been committed. The offense, then, being originally one against the habitation of the citizen, the effect of the amendment of 1866 was to engraft upon

the common-law offense a statutory amendment by which burglary could be committed with the intent to commit larceny; whereas, before, the breaking was burglary when the intent was to commit a felony; and a new class of houses was added where previously only the dwelling or mansion was the subject-matter of burglary. The original definition in Cobb's Digest followed the common law, and the language in reference to outhouses contiguous to or within the curtilage, as well as the provision in regard to the hired room, were adaptations of decisions construing the common-law definition. When more kinds of houses were added by the statute, there resulted a modification of the rule of pleading as to burglary, so as to bring the necessary and proper allegation of an indictment for burglary within the purview of the more general provisions of the Penal Code, §929. The indictment is sufficiently technical, if in the words of the statute, thus rendering inapplicable the rule laid down by Wharton (Whart. Cr. L. §815), that "Where burglary is in any outhouse, which, by law, is considered part of the dwelling-house, it must still be laid to be done in the dwelling-house."

2. Another ground of the demurrer is that the indictment charged both burglary and larceny from the house. There was no error in overruling this demurrer. The indictment does not join the charge of burglary in a count with larceny from the house; it alleges larceny from the house as an incident of the burglary. It is permissible either to charge a burglary and larceny in the same count or to add a count for larceny from the house to an indictment for burglary. The provision with reference to larceny was one of the additions made by the act of 1866.

3. We do not think the evidence was sufficient to authorize a conviction of the defendant of the offense of burglary. The evidence did not show the house to be a dwelling-house or a part of the dwelling-house, or contiguous to the dwelling-house, or within the cutilage or protection of the dwelling-house. All that the evidence circumstantially showed was, that the defendant broke open a corn-crib and stole a little more than a bushel of corn. A corn-crib, unless it be within the curtilage, is not the subject-matter of burglary. The breaking and entering of such a house is larceny from the house. It is only when the corn-crib is part of the dwelling-house under the common law, or when, as explained by our statute, it becomes an outhouse contiguous to or within the cur-

tilage or protection of the mansion or dwelling-house, that a barn or corn-crib can become subject-matter of burglary. In *Bearden* v. *State, 95 Ga.* 459, 20 S. E. 212 (which we find, upon examination of the original record, was a case very similar to the case at bar), it was held that "Where the house broken and entered was not a dwelling nor within the curtilage, and was neither alleged nor proved to be a place of business, but was in fact a corn-crib or barn in which corn was stored, there was no burglary. The offense proved was larceny from the house only." In the *Bearden* case there was direct evidence of the breaking and theft, while in the present case the evidence was circumstantial. In the *Bearden* case one hundred bushels of corn were alleged to have been taken; in the present case the indictment alleges two bushels. The evidence in this case shows that the barn is about fifty yards from the dwell-house of the prosecutor, and the yard of the prosecutor is not enclosed. The barn and corn-crib is enclosed in a separate enclosure by a high plank fence which is not connected in any way with the dwelling-house. The barn, therefore, according to the evidence, relies for its protection, not upon the enclosure marking the curtilage of the dwelling-house, but upon a distinct enclosure of its own. "Curtilage," as defined by Burrill in his Law Dictionary, "is a yard, court-yard or piece of ground lying around or near to a dwelling-house included within the same fence." State *v.* Taylor, 45 Me. 322. "Curtilage, in law, means a fence or enclosure of a small piece of land around a dwelling-house, usually including the buildings occupied in connection with the house, which enclosure may consist wholly of a fence, or partly of a fence and partly of the exterior side of buildings so within the enclosure." Commonwealth *v.* Barney, 64 Mass. 482; Commonwealth *v.* Intoxicating Liquors, 140 Mass. 287 (3 N. E. 4). "Curtilage means the yard or court for the protection and security of the mansion-house; an enclosure belonging to the dwelling-house. When used in a penal statute, it must be construed according to the strict significa-tion of the term." State *v.* Shaw, 31 Me. 523, 525. "Curtil-age includes the yard, garden, or field which is near to and usually in connection with the dwelling." Cook *v.* State, 83 Ala. 64 (3 So. 849, 3 Am. St. R. 688). At the common law the word "curtilage" was very nearly synonymous with court-yard. As we have explained above, the portion of the definition of burglary, con-

tained in the Penal Code, § 149, which is to some extent explanatory of the nature of the houses which may be subject to burglary, is an adaptation of decisions of the English courts in cases of burglary under the common law. As the word "curtilage" is thus used, it always denotes an exclosure, including the dwelling-house. It is true that changed conditions in this country, and the absence of fences in many instances, may necessarily affect our definition so as not to render the presence of an enclosure indispensable. But to supply the place of an enclosure, there must be apparent a necessity for the use of the outhouse alleged to be within the curtilage, either as a part of the dwelling-house, or that the use of such outhouse is indispensably necessary to the domestic comfort of the household in the occupancy of the dwelling. This barn can not by any rule be construed as part of the dwelling-house, and it can not come under the rule laid down in *Bryant* v. *State,* 60 *Ga.* 358, where a gear-house was held to be within the protection of the dwelling-house. In the *Bryant* case the yard of the dwelling-house was enclosed by a fence and by the same fence as the gear-house, and though there was a cross-fence between the dwelling and the gear-house there was a gate between, and the evidence shows that it was always left open at night so as to constitute one yard and to be under the protection of the yard dog. In that case a conviction for burglary was expressly upheld upon the ground that the proof was that the gear-house was within the enclosure of the yard, and that, though separate from the remainder of the yard by a fence, the gate opening into the particular enclosure containing the gear-house was always kept open at night so as to have the protection of the yard dog like the dwelling and rest of the yard.

We think, therefore, that the verdict of guilty of burglary was not supported by the evidence, and for that reason the judge erred in not granting a new trial. The circumstances proved may establish the guilt of the defendant of the theft of the corn, but there is such a wide difference between the penalty which may be inflicted in a case of burglary and that allowable in cases of larceny that the defendant's right to be tried for the offense of which he is really guilty affords an unanswerable reason for the grant of a new trial.

*Judgment reversed.*