## Unseld, Jr., et al. v. Commonwealth.

(Decided November 4, 1910.)

### Appeal from Nelson Circuit Court.

Criminal Law—Burglary—Breaking into Smokehouse and Stealing Therefrom.—Under Ky. St., section 1162, providing "if any per-son shall feloniously break into any dwelling house or any part thereof, or any outhouse belonging to or used with a dwelling house, and feloniously take away anything of value, he shall be confined in the penitentiary not less than two nor more than ten years," where one's dwelling house was burned near his smokehouse in which he kept his meat stored, and he was compelled to move his family into another dwelling two or three hundred yards away from the smokehouse and outside of the same enclosure, the breaking into the smokehouse and stealing meat therefrom was burglary, or housebreaking, as the case may be.

NAT. W. HALSTEAD for appellants

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Appellants were convicted under an indictment charging housebreaking.

Section 1162, Ky. Stats., provides in part: "If any person * * * shall feloniously break into any dwelling house or any part thereof, or any out house belonging to or used with a dwelling house, and feloniously take away any thing of value, although the owner or any person may not be there, he shall be confined in the penitentiary for not less than two nor more than ten years."

In this case the house alleged to have been broken into was a meat house. It was situated in the yard in which the owner's dwelling had been. The dwelling burned shortly before the act herein charged, and the owner had been compelled to take refuge with his family in a vacant school house 200 or 300 yards distant. It was not on his land, and of course not in the same inclosure, as the meat house. In the meat house was a quantity of bacon being cured and preserved by the owner for the use of himself and family. The meat house was thus used, and every day or so resorted to by the owner and his family for the purposes for which it was set apart,

and was so used in conjunction with his residence that burned as well as with the temporary residence which he had taken up in the nearby building. The crime fixed by the statute is of a kind with burglary, but owing to certain requisites to the latter which are frequently lacking, it was intended to extend the offense. So that now whether the breaking be in the day time, or whether the owner or other persons be thereat, or whether the outbuildings be within the curtilage, or be part of the messuage, it is equally an offense. Doubtless the line of distinction at the common law whereby certain outbuildings were deemed part of the dwelling, in defining burglary, was intended to be observed in this statute in a measure. But it was intended to enlarge the scope of the law as to the criminal act, and bring that into its cognizance which before was without. Still the main idea as in the beginning, was to protect the habitation from felonious invasion. Owing to the frequent isolation and unprotected condition of the dwelling, and from the lack of security in most instances, the owner is powerless to protect that class of property from thieves who break in and steal, and who thereby put in jeopardy the lives of the inmates of the homes. It is deemed the most sacred spot of land and its contents the most coveted, that the owner has. It is his home. His instinct is to protect it first and at every hazard. It is the theme of his favorite song, the object of his tenderest sentiment, the subject of his most positive political declaration. In the Great Charter it was named as a place forbidden to the King or his soldiers, except by the owner's invitation. In the Constitution it is similarly guarded as against the sovereign right; in the statute it is treated as a thing reverenced above the power of eminent domain, exempt from debt, that spot wherein the humblest man finds a castle of safety. Consequently it is hedged about by every protection which the law can devise. Among them is the severe punishment inflicted on those who feloniously break into it. A part of the castle, or of the messuage, was necessarily those outbuildings so intimately and directly connected with the habitation, and the use of which were so essential to its enjoyment as a habitation, that every reason for protecting the one applied to the other. It was, therefore, held that a smoke house is a part of the dwelling, though not physically connected with it. It was sufficient if it stood near enough to be used as an appurtenant (State v. Langford,

1 Devereux, 253) or though not in the same yard as the dwelling, if the smoke house opened into the yard (State v. Twitty, 1 Haywood, N. C. 102). And it is said in 2 East Pl., "If the outhouse be adjoining to the dwelling house, and occupied as parcel thereof, though there is no common enclosure or curtilage, they may still be considered as parts of the mansion." Or, as this court in White v. Commonwealth, 87 Ky. 456, observed, "If the place which has been entered, considering both its situation and use, be fairly considered as appurtenant to and a parcel of the dwelling house," the act is burglary or housebreaking as the case may be. (Dunn v. Commonwealth, 119 Ky. 457, 27 Ky. Law Rep. 113.) The test is, the use and proximity. It is no longer, as it was once thought to be, a matter of enclosure, or fence. Nor is it ever one of title. The dwelling in this instance was the school house, converted into that purpose. The smoke house in question was without doubt being used in connection with that dwelling, as though it stood in a few feet of it and hedged about by the same fence. It was close enough for such use. It was, within sight, within a minute or so's walk, and available by its situation for all the uses of a smoke house.

While the evidence connecting the appellants with the breaking is conflicting, it was of a character from which it could well be found that they were guilty, and the jury, within their province of sifting the truth from conflicting stories of witnesses confronting them, and weighing their statements according to interest, integrity and intelligence, found the verdict of guilty. We do not feel justified in disturbing it.

Judgment affirmed.