## 2518.  HAINES *v.* THE STATE.

1. It was error to overrule a motion for a continuance or postponement where it was shown that the defendant had been indicted at the term of court then pending, had been arrested at four o'clock the previous afternoon, and had made diligent effort to procure the attendance of a material witness, who was shown to be accessible.  So far as appears from the record, the accused had no notice of the charge against him, prior to his arrest, and, the witness upon whom he relied being shown to be absent from his home (eleven miles from the court-house) at the time that the accused went to subpœna him, a longer time than from four o'clock one afternoon until nine o'clock the next morning should have been allowed the defendant to procure the attendance of his witness.

2. Motions for continuance, made at the term at which the indictment is found, while addressed to the discretion of the court, stand upon a different footing from such motions made at a subsequent term.  As to the motions first referred to, the discretion of the court should be liberally exercised, to the end that the defendant may have fair and reasonable opportunity to prepare for trial, and every facility should be afforded him to present his defense as fully as he would be able to do were the case tried at a subsequent term.

3. To call a woman a "damned son of a bitch" is vulgar, profane, and unbecoming language, and the court may take judicial notice of this fact and instruct the jury accordingly.

4. The statute which penalizes drunkenness "within the curtilage of any private residence" (Acts 1905, p. 114) necessarily includes appearing in an intoxicated condition in the dwelling-house itself.  To appear in an intoxicated condition in any portion of the area enclosed by the curtilage, whether the same be within or without the dwelling-house, is a violation of this statute.

5. Upon the trial of one accused of a violation of the statute prohibiting intoxication upon a public highway or within the curtilage of the residence of another, the court, upon request, should charge the jury that it is their province to say what it takes to make boisterousness or indecent conduct or acting, or vulgar, profane, or unbecoming language, or

loud and violent discourse, and likewise that it is the province of the jury to determine, from the evidence, whether or not the defendant was drunk or intoxicated.

6. Where exception is taken to the refusal of the court to give the jury certain instructions requested in writing, and the judge, in approving the grounds of the motion for a new trial, certifies that the request was refused "except in so far as the same may be covered by the main charge," and the charge of the court does not appear in the record, and is not specified as material to be transmitted to this court, it will be presumed that the jury were fully and correctly instructed as to the principle sought to be presented by the request to charge.

DECIDED JANUARY 31, 1911.

Indictment for misdemeanor; from Douglas superior court— Judge Edwards. January 29, 1910.

*J. S. James,* for plaintiff in error.

*W. K. Fielder, solicitor-general,* contra.

RUSSELL, J.   The defendant was indicted for a violation of the act of 1905 prohibiting drunkenness or intoxication in certain public places, and also within the curtilage of any private residence not in the exclusive possession of the person so intoxicated (Acts 1905, p. 114) ; and he excepts to the judgment refusing his motion for a new trial.   We shall not treat of those grounds of the motion which deal with the question of newly discovered evidence, not only because the testimony appears in the main to be merely cumulative and impeaching, but also because, under the view that we take of this case, a new trial will be granted, and the defendant will have an opportunity of presenting this testimony for whatever it is worth before another jury.   A considerable part of the argument was addressed to the fact that one of the witnesses for the State was a woman of ill repute, and that the defendant should not have been convicted upon such testimony.   In regard to this, we can only repeat what we have often said, that the credibility of the witnesses is a matter exclusively for the jury, and that a new trial can not be granted by this court merely because the witnesses supporting the finding rendered might appear to us unworthy of belief.

1.   We think the court should have granted the defendant's motion for a continuance, or at least should have used his discretion to grant a postponement for a sufficient length of time to have enabled the defendant to prepare for trial.   Because we deem it was error not to grant the motion for a continuance, and because a postponement at least should have been allowed, to afford the de-

fendant a fair opportunity to prepare for trial, we feel constrained to reverse the judgment refusing a new trial. It appears from the record that the defendant was put on trial at nine o'clock on Thursday morning. He was arrested under the presentment, at Douglasville, after four o'clock the previous afternoon. From the fact that the defendant was charged by presentment, no inference can be indulged that he had notice that he would be put upon trial; for he must be presumed to be consciously innocent until his guilt is made manifest to the jury. Upon his motion for a continuance, he testified that he was arrested the previous day after four o'clock, and that as soon as he had given bond for his appearance at court, he went to the clerk of the court and obtained a subpœna; that he lived ten or twelve miles from Douglasville, that the witness for whom he obtained the subpœna lived about eleven miles from Douglasville; that he went to the witness's house and reached there with the subpœna at ten o'clock at night, intending to serve him with the subpœna, but was informed that the witness had gone to Rockmart, to be absent several days. Rockmart is twenty-five or more miles away, and there was no railroad over which the witness could reach there and get back to court as required by his bond. The defendant further swore that he expected to prove by the absent witness that the witness was with the defendant at the house alleged in the indictment on the occasion named therein, and could prove by him that the accused was not drunk and had not had any whisky or intoxicating wines, liquor, beer, or other intoxicating drink; further, that he could prove by the absent witness that he did not act in a boisterous manner or use any vulgar, profane, or unbecoming language, or engage in loud and violent discourse. The defendant's showing as to what he expected to prove by the absent witness would have presented a complete defense to the charge against him. In addition to a showing as to the other formal requirements of a motion for continuance, the defendant testified that he believed he could procure the attendance of his witness before the adjournment of the court. As the indictment had just been returned against the accused, and he had been under arrest only about sixteen hours, and in that time had apparently made every effort to procure the attendance of the absent witness, consistent with compliance with the terms of his bond, we think the court erred in not allowing him further opportunity to procure the presence of the absent witness.

2.   As was pointed out in *Brooks* v. *State, 3 Ga. App.* 458 (60
S. E. 211), upon the authority of the ruling in *Copenhaven* v.
*State,* 14 *Ga.* 24, there is a marked difference between the discre-
tion of the trial judge, as related to a showing for continuance,
when the motion is made at the term at which the indictment is
found, and the discretion with which the court is clothed when
the case is called for trial at some subsequent term.   In the *Brooks*
case we pointed out the distinction between section 962 of the Penal
Code of 1895 and the language employed in section 963, and held
that when a motion for continuance or postponement is made at
the term at which the indictment is found, the rule laid down in
section 963 should be applied.   A strict showing should be made, to
conform with the requirements of section 962 of the Penal Code;
but when section 963 is applicable, as it is in all cases where the
defendant is arraigned for trial at the term at which the accusation
has been returned, formality is of but little value; the broad prin-
ciples of justice, as applied to the particular circumstances of the
case, must prevail.   The defendant in the present case had but a
very few hours of daylight in which to get a witness who lived over
eleven miles from court.   He went to his home to serve him with
a subpœna.   He found him absent, and learned that he was at
another place twenty-five miles away.   His bond required that he
should be at court at nine o'clock the next morning.   It was im-
possible for him to obtain the presence of the witness by that time.
He had used every reasonable means within his power to procure
the attendance of the witness.   As we see it, the principles of
justice required that the case should at least have been postponed,
and the defendant given an opportunity either to go or to send to
Rockmart for the absent witness.   If there had been a counter-
showing as to what the absent witness would have sworn, the case
might have been different; but under the uncontradicted evidence
of the defendant upon his motion, the testimony of the absent wit-
ness was most material and important, and met and contradicted
every possible phase of the State's case.

3.   Complaint is made that the judge charged the jury that to
call a woman a "damned son of a bitch" is vulgar, profane, and
unbecoming language.   In the state of the present record we find
no error in this instruction.   Of course, it was for the jury to say
what language the accused actually used, and it was also for the

jury to say that the language as used, if any was used by the defendant, manifested or gave evidence of the fact that the defendant was intoxicated. The specific charge upon which he was being tried was not that of using profane language, but of being intoxicated within the curtilage of a residence other than his own. Under the provisions of the act of 1905 (Acts 1905, p. 114), the intoxication which is prohibited is that which is manifested by certain acts specifically mentioned in the statute; one of these is the use of vulgar, profane, and unbecoming language. It is, of course, exclusively within the province of the jury in any case to determine what language was used, and also, we think, generally, to say whether the language proved to have been used by the defendant is vulgar, profane, or unbecoming. But the language quoted by the judge in his charge is so gross that we think that courts can as well take judicial knowledge of the fact that such language (if the jury found that the identical language quoted was used) is vulgar, profane, and unbecoming, as that the courts can take knowledge of the fact that whisky, brandy, and lager beer are intoxicating; and for the same reason, to wit, that the fact rests in the common knowledge of every ordinarily intelligent being who is possessed of common decency.

4. The statute which penalizes drunkenness "within the curtilage of any private residence" (Acts 1905, p. 114) necessarily includes appearing in an intoxicated condition in the dwelling-house itself. To appear in an intoxicated condition in any portion of the area enclosed by the curtilage, whether within or without the dwelling-house, is a violation of the statute above referred to. The point is made by counsel for the plaintiff in error, by a request to charge, which we think was properly refused, that being intoxicated in a dwelling-house is not penalized by the act of 1905 now under consideration. To our mind the greater includes the less, and to appear intoxicated in the residence of another must necessarily be to appear intoxicated within the curtilage; because unless there is a mansion or dwelling-house, there can be no curtilage; and if there is a curtilage, the dwelling-house must be within it. For discussion of this subject, see *Hutchins* v. *State,* 3 *Ga. App.* 300 (59 S. E. 848).

5. The defendant requested the court to charge as follows: "The court can not say to you what it takes to make boisterousness

or indecent conduct or acting, or vulgar, profane. and unbecoming language, or loud and violent discourse. nor what it takes to make drunkenness or intoxication. These are all matters for the jury to determine from the evidence in the case." The court refused to charge as requested. We can not say, under the note of the court to a somewhat similar request, in which it is stated that the substance thereof was included in the general charge, that we would grant a new trial upon this ground of the motion alone; but as the case is to be tried again, we deem it proper to say that the defendant is entitled to have the jury instructed, if he desires, upon the substance of the principle contained in the request, if not in its exact.language. The jury are the judges of the matters to which the request refers, because each of them is a matter of fact. It is only when a fact which has been proved has been classified by the universal knowledge of all mankind that the judge is permitted to declare its quality.

6. Several of the assignments of error relate to the refusal of the court to give the jury certain instructions requested by the defendant. These include the 5th, 6th, and 7th special grounds of the motion for new trial. To each of these, however, the judge has qualified his approval by stating that the request was refused except so far as it was covered in the main charge. The plaintiff in error did not specify the charge of the court as a part of the record material to be transmitted to this court. For that reason we are unable to determine how far the main charge conforms in substance to the requests which appear to be pertinent. In the absence of the charge, and in view of the note of the presiding judge, it must be assumed that the jury were fully and correctly instructed in the court's own language as to each of the principles involved in the requests to charge.

*Judgment reversed.*