Syllabus.

## Wytheville.

## PETTUS V. COMMONWEALTH.

### June 19, 1918.

1. INTOXICATING LIQUORS—*Indictment—Demurrer.*—An indictment under the prohibition act, in the form authorized by the statute, is not demurrable.

2. APPEAL AND ERROR—*Harmless Error—Instruction Favorable to Plaintiff in Error.*—In a prosecution under the prohibition act, the court instructed the jury that it was unlawful for the defendant to keep or store for sale, gift or use, ardent spirits in any other place than in the *bona fide* home of himself. This was a mere inadvertence, for it is clearly unlawful to store ardent spirits for sale, even in a *bona fide* home; but inasmuch as the error is favorable to the plaintiff in error and not against his interest, it is harmless.

3. WORDS AND PHRASES—*Curtilage.*—The curtilage of a dwelling house is a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment: the yard, garden or field which is near to and used in connection with the dwelling.

4. INTOXICATING LIQUORS—*Curtilage.*—Accused owned a city lot, fronting on two streets. On one front there were two store buildings six or seven feet apart, with an alley-way between them and connected by a hallway. In one of these buildings accused conducted the business of selling soft drinks, and in the other a grocery. Accused was unmarried and without family, and had a room over the store in which he sold soft drinks. There was a staircase leading from the room in which he slept down into the soft drink establishment, and there was an entrance from his sleeping room across the hall into the storage room over the grocery store from which a stairway led down into the grocery store. On the other street front there was another building, the lower floor being a vacant store, and the upper occupied by a tenant and his family. The rear of this building was about one hundred feet from the rear of the double store on the other street. Accused stored liquor in the grocery store and under the floor of the vacant store.

*Held:* That the two store rooms in which the liquor was stored were not within the curtilage of the *bona fide* home of the accused.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Affirmed.*

The opinion states the case.

*A. B. Hunt,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *J. D. Hank, Jr. Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The facts of this case are, that the accused owned a lot in Roanoke city, one end of which fronted on Ninth avenue, and the other on Gainsboro avenue. On the Ninth avenue front there were two store buildings six or seven feet apart, with an alleyway between them and connected by a hallway. In one of these buildings he conducted the business of selling soft drinks, and in the other a grocery. He was unmarried, without family, and had a room over the store in which he sold soft drinks. There was a staircase leading from the room in which he slept down into the soft drink establishment, and there was an entrance from his sleeping room across the hall into the storage room over the grocery store from which a stairway led down into the grocery store. On the Gainsboro avenue front there was another building, the lower floor being a vacant store, and the upper occupied by a tenant and his family. The rear of this building was about one hundred feet from the rear of the double store on Ninth avenue.

On the 20th of December, 1916, the police searched these premises. In the grocery store, concealed under one of

the front windows, they found fifteen pints of whiskey, thirteen quarts of rum, one gallon of wine, one gallon of whiskey and one gallon of cider. It was all stored under the show windows in the front of the building and planked up. Half a pint of whiskey was found in the room in which he slept. After this discovery the accused admitted that he had 332 pint bottles of beer concealed under the floor of the vacant store on Gainsboro avenue, and it was found there.

The accused was the only witness who testified in his defense. He admitted all of the facts above stated, but denied that he had sold any ardent spirits, and said that he had purchased all of it for his personal use before the 1st of November, 1916, when the prohibition law became effective.

He demurred to the indictment and to each of the two counts thereof. As the indictment is in the form authorized by the statute, the demurrer was properly overruled. *Pine & Scott* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652.

The court instructed the jury that it was unlawful for the defendant to keep or store for sale, gift or use, ardent spirits in any other place than in the *bona fide* home of himself. Of course, this was a mere inadvertence, for it is clearly unlawful to store ardent spirits for sale, even in a *bona fide* home; but inasmuch as the error is favorable to the defendant and not against his interest, it is harmless, and therefore there is no merit in this assignment of error. It is hardly probable that the jury could have been misled by that instruction. *Miller & Meyers* v. *Newport News,* 101 Va. 438, 44 S. E. 712; *Va. Ry. & Power Co.* v. *Hill,* 120 Va. 397, 91 S. E. 194; *Lucchesi* v. *Commonwealth,* 122 Va. 872, 94 S. E. 925.

The other alleged error relied upon by the accused grows out of the fact that he claims that both the grocery store fronting on Ninth avenue and the store room fronting on

Gainsboro avenue constituted parts of his *bona fide* residence, and this contention is presented by exceptions to certain instructions given at the instance of the Commonwealth, and by instructions offered by him but refused by the court. In support of his contention he cites the case of *Bare* v. *Commonwealth*, 122 Va. 783, 94 S. E. 168, claiming that the places in which the liquor was stored were within the curtilage. There is no merit in this contention. The grocery store was no part of the home, nor was the storehouse fronting on Gainsboro avenue. Both were built for and devoted to entirely different uses.

In *Bare* v. *Commonwealth, supra*, this is said: "The curtilage of a dwelling house is a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the yard, garden or field which is near to and used in connection with the dwelling. 3 Cyc. 988; *Washington* v. *State*, 82 Ala. 31, 2 So. 356; *Cook* v. *State*, 83 Ala. 62, 13 So. 849; 3 Am. St. Rep. 688; *State* v. *Shaw*, 31 Me. 523; *Commonwealth* v. *Barney*, 64 Mass. (10 Cush.) 480; *Unseld* v. *Commonwealth*, 140 Ky. 529, 131 S. W. 263, 140 Am. St. Rep. 393."

The contention that the two store rooms in which the ardent spirits were stored were within the curtilage of the *bona fide* home of the accused is clearly untenable.

The accused was found guilty under both counts of the indictment, and his conviction is supported by the evidence.

*Affirmed.*