33824. CARTEE *v.* THE STATE.
33825. MIMMS *v.* THE STATE.

DECIDED MARCH 7, 1952.

*Jack D. Davidson, H. W. Davis,* for plaintiffs in error.
*Hope D. Stark, Solicitor-General,* contra.

CARLISLE, J. L. T. Cartee and Clarence Mimms were jointly indicted and tried for the offense of cattle stealing. Both were

convicted and each moved for a new trial. Their identical motions, based upon the usual general grounds and three special grounds, were overruled and each defendant excepted. A decision in one case will be decisive of the other, and two cases are decided here together.

1. In special ground 1 of the amended motion for a new trial, error is assigned on the trial court's refusal to grant a continuance or postponement of the trial. It appears that, when the case was sounded, counsel for the defendants announced not ready and stated to the court: "I desire to make a motion for a continuance on the grounds that the defendants were just arrested in Atlanta, Georgia, this morning around two o'clock a. m., and placed in jail here in Jefferson around eight or eight-thirty, and were indicted by the grand jury this afternoon. I was just appointed a little while ago, and I have not had time to study the indictment or confer with the defendants or to prepare their case for trial, and there is one witness I would like to try to get if possible." Upon being asked by the court how long counsel would want, counsel replied: "I would think two or three days; I want to try to locate a witness and would like to confer with Mr. Cartee's brother in Atlanta. I have not had time to prepare the case to properly represent the defendants." Upon being directed to make his showing counsel for the defendants placed on the stand the defendant L. T. Cartee, who testified in part as follows: "I feel that with sufficient time I could produce the man from whom I purchased the cow that I am charged with stealing, as a witness in my behalf. I can not say definitely as to the time, but feel that I could find him in a day or so. I do not know his name, but believe I could find him on Brady Avenue at the stockyard in Atlanta, Georgia, as I have seen him there several times before trading livestock at the stockyard. I gave him ninety-five dollars in cash and two shoats weighing 125 to 135 pounds each for the cow in question and certainly feel that I could produce this man in a day or two *if permitted to make bond,* as tomorrow is a regular sale day at this particular stockyard." On cross-examination: "The man was stocky build with a red face, and I [had] seen him at this barn before. No, Mr. Hightower, the G. B. I. man, did not offer to take me to find the man this morning. I do not know of anybody I could call

on the phone to locate him. I have no assurance I could find him, but I have seen him hanging around the stockyard on sale days." By the Court: "Q. Do you know where he lives? A. No, sir. Q. You don't know where his residence is? A. No, sir. Q. You don't know his name? A. No. sir." Re-cross-examination: "The stockyard where I bought the cow is across from the auction barn of Lawton and Ragsdale, where these fellows get together and trade and traffic. . . I did not keep the cow but a few hours. I carried her to a Mr. Moore, as I knew he bought milch cows, and he suggested that I go down to a Mr. Jarrett's and Mr. Mimms and I sold her to Mr. Jarrett for one hundred and seventy dollars. Yes, the gentleman talked with me this morning, but did not offer to go with me to hunt the man as I did not know his name." Redirect examination: "They have sales at this barn on Tuesdays and Thursdays and tomorrow is sale day, starting at eight or eight-thirty a. m. I am not making this motion for the purpose of delay, but feel if given an opportunity I could find this man who would aid me in my defense in this trial."

The State made its counter-showing by introducing two wit-nesses. B. G. Ragsdale, a lieutenant with the G. B. I., testified: "I have been in this case since about two o'clock this morning. I talked to Cartee this morning, yes, he said something about finding a witness and we told him we would give him the same assistance we gave Mr. Jarrett, but he did not know the man's name or address. He did not ask me to go to the stockyard to look for the man." Cross-examination: "No, we did not leave Atlanta this morning around two or two-thirty o'clock. We left around six o'clock [this morning]. We did not tell him we could not help him without the man's name or address. Mr. Cartee did tell us he would know the man if he saw him." The testimony of L. D. Hightower, another agent of the G. B. I., was to the same effect as that of Mr. Ragsdale. They were working on the case together. At the conclusion of the State's counter-showing, counsel for the defendants made the following statement to the court: "This indictment was given to me since noon and I have had it less than two hours. I haven't had sufficient time to study the indictment and prepare my case and I cannot safely go to trial at this time."

The court overruled the motion for a continuance and gave counsel for the defendants until the following morning to prepare the case. Upon the opening of court the following morning at nine o'clock, counsel for the defendants again renewed his motion to continue (postpone) the case for two or three days, and the court again overruled it.

"Whether or not a reversal is to be adjudged because counsel were not allowed sufficient time to prepare the case for trial is to be determined by the particular facts and circumstances of each case" (*Cannady* v. *State,* 190 *Ga.* 227, 229, 9 S. E. 2d, 241); and, notwithstanding our familiarity with the well-known rule that "what time shall be allowed a defendant and his counsel to prepare for trial is a matter resting in the sound discretion of the trial judge, with which . . [appellate courts] will not interfere, unless abused" (*Ivey* v. *State,* 154 *Ga.* 63 (1), 113 S. E. 175), we are constrained to hold that, under the facts and circumstances of the present case, the trial court's refusal to grant a postponement of at least two or three days, as requested, in order to permit the defendant to locate a witness upon whose testimony the defendants' entire defense would rest, was a manifest abuse of discretion.

By the uncontradicted evidence on the hearing for the continuance or postponement, the defendants were arrested in Atlanta, Georgia, at about 2 or 2:30 a. m. on the day of the trial and from there taken in custody to Jefferson in Jackson County, arriving at about 8 or 8:30 a. m., and there lodged in jail where they remained until the time of the trial. The grand jury was recalled and returned a bill of indictment on the afternoon of the same day. Counsel for the defendants were appointed by the court, and within two hours of the appointment the case was sounded for trial. The defendants, we take it, were not permitted to give bond, as one of the defendants, Cartee, stated on the hearing for the continuance or postponement that, "if permitted to make bond," he felt he could locate his witness within a day or two, as the following day was a sale day at the livestock barn where he expected to locate his witness who frequented the place on such days.

One accused of crime is entitled as a matter of right to a reasonable time in which to pepare for his trial (*Battle* v. *State,* 9 *Ga.*

*App.* 192, 70 S. E. 973); or, to state the rule more fully, as was done in *Reliford* v. *State,* 140 *Ga.* 777 (79 S. E. 1128): "It is declared in our bill of rights . . [Code, § 2-105] that 'Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel.' This constitutional guaranty of 'benefit of counsel' means something more than the mere appointment by the court of counsel to represent the accused. He is entitled to a reasonable time for preparation by such counsel to properly represent him on the trial. As was stated in *Blackman* v. *State,* 76 *Ga.* 288: 'This constitutional privilege would amount to nothing if the counsel for the accused are not allowed sufficient time to prepare his defense.' To the same effect see *Jones* v. *State,* 65 *Ga.* 506; *Jackson* v. *State,* 88 *Ga.* 784 (15 S. E. 677); *McArver* v. *State,* 114 *Ga.* 514 (40 S. E. 779); *Nick* v. *State,* 128 *Ga.* 573 (58 S. E. 48); *Harris* v. *State,* 119 *Ga.* 114 (45 S. E. 973). As was stated in the case last cited: 'Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes.' "

Preparation for trial, we hardly need say, consists not alone in counsel's diligent perusal of the decided cases of the nature to be tried, if needs he must, but in consulting with his client, assembling the facts surrounding the client's connection with the alleged crime, if any, locating and subpoenaing witnesses, if any, who are cognizant of such facts and can testify thereto. An intellectual giant, prescient in and informed upon every abstract principle of law, familiar with every decided case upon the subject, is little better than a fool on the trial of a case if he is to be kept in ignorance of the facts of his client's case and denied witnesses who might substantiate his client's defense. Whether or not the matters of law involved in this case were usual or unusual, intricate or uninvolved, would not of itself be decisive of the propriety of forcing the defendants to trial. Judge Fish's suggestion, obiter albeit, in *Charlon* v. *State,* 106 *Ga.* 400 (32 S. E. 347), that unusual or intricate matters of law might be ground for a continuation (or postponement), should not be taken to mean that the clarity of the law upon the subject of crime obviates the necessity for a continuance (or postponement) where counsel *for other valid reasons* is not prepared to go to trial. As

was said by our first Justice Lumpkin in *Copenhaven* v. *State*, 14 *Ga.* 22, 24, "Ours is a liberal code upon the subject of continuances in criminal cases"; and, as was held by Judge Russell in *Brooks* v. *State*, 3 *Ga. App.* 458 (3) (60 S. E. 211), "Motions for continuance, made at the term at which the indictment is found, while addressed to the discretion of the court, stand upon a different footing from such motions made at a subsequent term. In such cases the discretion of the court should be liberally exercised in favor of a fair trial, no less than that the trial should be speedy; and every facility should be afforded a defendant for presenting his defense as fully as he might be able to do were the case tried at a subsequent term. Reasonable opportunity for the defendant to prepare his defense should not be sacrificed in the interest of speed." See also *Waldrip* v. *State*, 34 *Ga. App.* 692 (130 S. E. 829); *Battle* v. *State*, supra; *Haines* v. *State*, 8 *Ga. App.* 627, 630 (70 S. E. 84); *Patten* v. *State*, 10 *Ga. App.* 20 (72 S. E. 521).

The defendants were confined in jail and had no opportunity to locate the witness. Counsel appointed to defend the case could not have made the inquiries in spite of the postponement of the case from the afternoon it was sounded until the following morning at nine o'clock. If the witness was to be located at all, he could be found in Atlanta at the stockyards. So far as we know, they do not operate these auctions at night, and indeed if they do, the defendant Cartee had testified that sales were held only on Tuesdays and Thursdays. The day to which the trial was postponed and on which the defendants were put to trial was a sale day and a day on which the defendants or counsel might have been able to locate their prime witness. See, in this connection, *Cummings* v. *State*, 151 *Ga.* 593, 596 (107 S. E. 771); *Brown* v. *State*, 120 *Ga.* 145, 147 (47 S. E. 543).

As we see it, under the provisions of Code § 27-2002, which is peculiarly applicable to criminal cases, the principles of justice required that the case should be postponed for at least the two or three days requested by counsel for the defendant. That such a witness existed, must be taken as true, as this was uncontradicted evidence of the defendant Cartee under oath. Quite obviously the testimony of the absent witness was material and vital to the defense.

Since we are of the opinion that the trial court erred in refusing at least a postponement of the case, all further proceedings were nugatory, and it follows that the court erred in overruling the motions for a new trial.

*Judgments reversed. Gardner, P. J., and Townsend, J., concur.*